**HEALTH SERVICES ACQUISITION CORP., Plaintiff-Appellant,**

v.

**John A. LILJEBERG, Jr., Defendant-Appellee.**

No. 86–3069.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1986.

Rehearing and Rehearing En Banc Denied Sept. 9, 1986.

---

Curtis R. Boisfontaine, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Kathryn J. Lichtenberg, Levy, Marx, Lucas & Rosen, William M. Lucas, Jr., Joyce M. Dombourian, New Orleans, for plaintiff-appellant.

A.J. Schmitt, Jr., Melvin W. Mathes, Schmitt & Mathes, New Orleans, for defendant-appellee.

Before CLARK, Chief Judge, GARZA, and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

Appellant Health Services Acquisition Corporation (HSAC) appeals from the denial of its motion to vacate a judgment and to grant a new trial. Finding that the judge who rendered the judgment against HSAC had constructive knowledge of facts sufficient to create an appearance of improprie-

ty under 28 U.S.C. § 455(a), we reverse and remand.

I

On November 30, 1981, HSAC brought an action for declaratory judgment in district court against John A. Liljeberg, Jr. to determine the ownership of a corporation known as "St. Jude Hospital of Kenner, La., Inc." This corporation had a state certificate of approval permitting it to construct a hospital. A trial on the merits was held before Judge Robert F. Collins, who rendered judgment for Liljeberg. Judgment was entered on March 16, 1982. The Fifth Circuit affirmed.

On August 17, 1983, HSAC learned that Judge Collins was and had been a member of the Board of Trustees of Loyola University. Loyola had been negotiating with Liljeberg to sell him property on which he could build a hospital; however, Liljeberg's ability to build the hospital was dependent on his obtaining control of the certificate of approval.

Based on this information, HSAC filed a motion to vacate the judgment and for a new trial. Judge Collins denied the motion, stating that he had not been involved in negotiations between Loyola and Liljeberg and had no knowledge of these negotiations.

The Fifth Circuit reversed. *Health Service Acquisition Corp. v. Liljeberg*, 747 F.2d 1463, slip op. at 7 (5th Cir.1984) (unpublished). While recognizing that there was no question as to the actual impartiality of Judge Collins, the court noted that "the judiciary must be governed by the appearance, as well as the reality, of disinterested adjudication." *Id.* The court therefore remanded the case to the district court for a determination of when Judge Collins learned of Loyola's interest in the lawsuit. On remand, a hearing based solely on documentary evidence was held before another judge.

The district court made the following findings.

Judge Collins had been a member of the Loyola Board of Trustees from 1977 to 1983. During that time the Board met five times a year. The minutes of each meeting were prepared several weeks after the meeting. The minutes, along with an agenda for the upcoming meeting and materials relevant to issues to be considered at that meeting, were then mailed to each Board member.

The disposition of certain property owned by Loyola, known as the Monroe Tract, was discussed at Board meetings in early 1979. The first mention of the St. Jude Hospital was made in the minutes of the November 29, 1979 meeting; Board members were informed that Loyola representatives had discussed selling Loyola property to a group of developers interested in building the hospital. It was also mentioned that the Board wanted to have this property rezoned.

The St. Jude Hospital was discussed at the January 24, 1980 Board meeting, which Judge Collins attended. The Real Estate Committee (of which Judge Collins was not a member) presented a report to the Board on the negotiations between Liljeberg and Loyola. The report discussed two offers from Liljeberg to Loyola and stated that Loyola had expressed interest in continuing negotiations with St. Jude. The Real Estate Committee also had informed Liljeberg that Loyola would probably not be interested in the project until a state certificate of approval was secured. Following the report, the Board voted to refer Liljeberg's second offer to the Real Estate Committee for further study. Judge Collins was present at the time this report was read and heard the report, in which the names of Liljeberg and St. Jude Hospital were mentioned a number of times.

At the March 6, 1980 meeting the Real Estate Committee recommended rejection of Liljeberg's offer, noting that Liljeberg had not yet obtained a certificate. Judge Collins did not attend this meeting.

There was a subsequent lull in negotiations between Loyola and Liljeberg. However, at the September 25, 1981 meeting

the Real Estate Committee indicated renewed activity regarding the possible construction of a hospital on the Monroe Tract. Judge Collins was present at this meeting.

At the November 12, 1981 meeting, which Judge Collins attended, there was speculation that the building of a hospital on the Monroe Tract would be a major investment advantage for Loyola. The Board approved a resolution calling for renewed negotiations with the St. Jude group and for efforts to have the surrounding area rezoned. Rezoning was discussed as a condition of the sale to Liljeberg and the building of the hospital.

Based on Judge Collins' attendance at meetings during which the sale to Liljeberg was discussed, Judge Collins had actual knowledge of Loyola's interest in the St. Jude Corp. at the time of those meetings on January 24, 1980 and September 25, 1981. However, Judge Collins had forgotten about Loyola's interest by the time the lawsuit came under his control in January 1982. Judge Collins did not obtain actual knowledge until March 24, 1982. At that time he reviewed material that had been sent to him in preparation for the March 25 meeting. This material informed the Board members that the Loyola Executive Committee had approved the sale of some 80 acres in the Monroe Tract to Liljeberg for the construction of a hospital.

Although the district court found that Judge Collins had actual knowledge of Loyola's interest in the litigation on March 24, 1982, it determined that Judge Collins was not required to recuse himself at that time because Loyola's interest terminated on March 19 when it entered the agreement to sell the property to Liljeberg. The agreement expressly stated that it was not contingent on Liljeberg's obtaining a certificate of approval in the pending litigation. Therefore the district court concluded that Loyola ceased to have any stake in the outcome of the litigation as of March 19. Since Judge Collins did not have actual knowledge of Loyola's interest during the time that he controlled the case *and* that interest still existed, the district court

found that Judge Collins was not required to recuse himself.

The district court also found, however, that Judge Collins had constructive knowledge of Loyola's interest in the litigation at all relevant times during the lawsuit. Specifically, the court noted that Judge Collins knew that Loyola owned the Monroe Tract and was trying to sell it, that he had been present at the January 24, 1980 meeting during which the negotiations with Liljeberg and the importance of the certificate for the contemplated hospital were reported by the Real Estate Committee, that he had attended other meetings at which the negotiations for the sale of the Monroe Tract to developers of the St. Jude Hospital had been discussed and approved, and that there was written information sent to and available to him regarding the negotiations with Liljeberg and Loyola's interest in the disposition of the certificate. The court found that these facts provided a basis for imputing knowledge of Loyola's interest to Judge Collins and created an appearance of partiality under 28 U.S.C. § 455(a).

Despite the finding of constructive knowledge, the district court held that Judge Collins was not required to recuse himself because the Fifth Circuit's remand had been limited to the question of actual knowledge. Since the court found that recusal would not be mandated by Judge Collins' actual knowledge, it denied HSAC's motion to vacate the judgment and grant a new trial. HSAC appeals.

II

28 U.S.C. § 455 provides:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

. . . .

(4) [Where he] knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a

party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

The goal of the disqualification statute is to promote public confidence in the judicial system by avoiding even the appearance of partiality. *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). In particular, section 455(a) was intended to establish an objective test so that "disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

In the present case there can be no serious doubt that Judge Collins, as a member of the Loyola Board of Trustees, had an interest in the well being of Loyola University.[1] Nor can it be doubted that that interest would be substantially affected by the outcome of the lawsuit between Liljeberg and HSAC since Loyola was negotiating with Liljeberg to sell him land on which to build a hospital and Liljeberg's ability to build the hospital was largely dependent on the outcome of the litigation. The question in this appeal is the effect of what Judge Collins knew or should have known about Loyola's interest in the lawsuit at the time he knew or should have known it.

### A

HSAC advances three theories under which Judge Collins was required to recuse himself in this case. First, HSAC notes that it is undisputed that Judge Collins had actual knowledge of Loyola's sale to Liljeberg as of March 24, 1982, eight days after the judgment was entered. At that time Judge Collins still controlled the litigation because he could have granted a new trial

or amended the judgment. *See* Fed.R. Civ.P. 59 (within 10 days of the entry of judgment a party may move for a new trial or the court on its own initiative may order a new trial); Fed.R.Civ.P. 52(b) (upon the motion of a party made within 10 days of the entry of judgment the court may amend the judgment). Therefore, HSAC contends that on March 24 Judge Collins should have recused himself and informed the parties of his recusal so that they could direct any motions for a new trial or to amend the judgment to a different judge.

Liljeberg responds that Judge Collins was not required to recuse himself or notify the parties on March 24 because, as the district court found, Loyola's interest in the litigation terminated on March 19 when it entered into an agreement to sell the property in question to Liljeberg. The agreement explicitly stated that it was in no way conditioned on the outcome of the litigation between HSAC and Liljeberg.

Furthermore, Liljeberg argues that even if Judge Collins was required to disqualify himself on March 24 this did not invalidate the judgment entered on March 16. Since HSAC in fact made no motion for a new trial or to amend the judgment, Judge Collins' failure to disqualify himself had no effect on the litigation.

The district court's determination that Loyola's interest in the litigation terminated as of March 19, 1982 is clearly erroneous. Although the agreement between Loyola and Liljeberg was not contingent on the outcome of the lawsuit, as a practical matter Loyola still had a substantial interest in Liljeberg's obtaining the certificate of approval. Without the certificate, it is very likely that Liljeberg would not have been able to build the hospital on the Monroe Tract. The construction of a hospital on its property was extremely important to Loyola as shown by the fact that Loyola was allowed under its agreement with Liljeberg to repurchase the land if a hospi-

---

1. The prior panel was of the opinion that Judge Collins' interest constituted an "other interest" rather than a "financial interest" under section 455(b)(4). *See Health Services*, slip op. at 6

(citing 28 U.S.C. § 455(d)(4)(ii)). We accept that conclusion for the purposes of this opinion without analysis of its validity or precedential effect.

tal was not build. Furthermore, the construction of a hospital on the Monroe Tract was critical to the effort to rezone the surrounding property owned by Loyola; the rezoning was also of vital interest to Loyola. Therefore, Loyola's interest in the litigation did not terminate as of March 19, 1982 and Judge Collins should have recused himself when he obtained actual knowledge of that interest on March 24.

■ Liljeberg's second argument is more troublesome. It is true that the actual knowledge Judge Collins obtained on March 24, by itself, did not require vacating the judgment entered on March 16. Generally a judge who learns that he has a financial or other interest in a case is only required to recuse himself from future proceedings. *In re Cement and Concrete Antitrust Litigation*, 515 F.Supp. 1076, 1081–82 (D.Ariz.1981), *appeal dismissed*, 673 F.2d 1020 (9th Cir.), *appeal dismissed*, 459 U.S. 961, 103 S.Ct. 285, 74 L.Ed.2d 272, *mand. denied*, 688 F.2d 1297 (9th Cir. 1982), *aff'd for absence of a quorum* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); 13A C. Wright & A. Miller, *Federal Practice and Procedure* § 3546 n. 13. Thus, the only effect of Judge Collins' recusal on March 24 would have been to allow HSAC to make any post-trial motions to a different judge, yet HSAC would not have been entitled to a new trial based on Judge Collins' obtaining actual knowledge on March 24 and apparently it had no other post-trial motions to make.

■ On the other hand, there can be no doubt that Judge Collins should have recused himself on March 24 and immediately informed the parties of his recusal and the reasons for it. In this regard, it makes no difference how much practical effect such action would have had on the outcome of the litigation. The purpose of the disqualification statute is to avoid even the appearance of impropriety; the appearance of impropriety is not lessened by the fact that the litigation would have come out the same anyway. *Cf.* Wright & Miller, *supra*, § 3553 ("[t]here should be no room in [the

recusal] context for the concept of harmless error to apply, nor for arguments to be made that in fact the judge acted in an impartial manner").

Judge Collins erred in failing to recuse himself on March 24 when he obtained actual knowledge of Loyola's interest in the litigation. However, our resolution of the constructive knowledge issue, *see infra* subsection C, makes it unnecessary to decide what the proper appellate remedy for this error would be.

### B

The second theory advanced by HSAC is that Judge Collins' recusal was required by his actual knowledge, prior to the litigation, of Loyola's dealings with Liljeberg. The district court found that Judge Collins had actual knowledge of these dealings on January 24, 1980 and September 25, 1981 but that he had forgotten about them by the time the litigation commenced. Given the presence of Judge Collins at meetings in which these dealings were extensively discussed, the finding of actual knowledge is not clearly erroneous.

HSAC argues that failure to recall facts which indicate an interest or bias on the part of the judge will not avoid the necessity of recusal. It relies on *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir.1978), and *Limeco, Inc. v. Division of Lime*, 571 F.Supp. 710 (N.D.Miss.1983). In *Rice* the court held that the district judge who had no recollection of a case in which he had participated as a state judge was nonetheless required to recuse himself under section 455(a) because of the appearance of partiality created. *Rice*, 581 F.2d 1117–18. In *Limeco* the judge granted a motion to recuse based on a vote which he had made in the Mississippi legislature 41 years earlier and which he had completely forgotten. *Limeco*, 571 F.Supp. at 711.

In both *Rice* and *Limeco* the facts forgotten by the judges were brought to their attention at the time motions were made to disqualify them from further proceedings. If a recusal motion had been made to

Judge Collins during trial he too could not have refused to disqualify himself on the grounds that he had forgotten about Loyola's interest.

However, a different situation is presented here because the recusal motion seeks to invalidate judicial actions taken before the judge recalled facts indicating an interest or bias. Since the judicial actions were taken without knowledge of those facts, no appearance of impropriety could arise merely because the judge knew the facts at some prior time. For example, if the recusal motion in *Limeco* had been made after the judge had rendered judgment, the judgment could not have been overturned merely because the judge had forgotten his vote in the Mississippi legislature 41 years earlier. Therefore, HSAC's argument that actual knowledge subsequently forgotten must always require recusal is too broad.

### C

The third theory advanced by HSAC is that Judge Collins' constructive knowledge of Loyola's interest in the litigation required his recusal. Since we find no cases directly addressing this issue, we turn to the language and purpose of the disqualification statute.

While section 455(b)(4) requires that a judge *know* that he has an interest in the litigation before recusal is required, section 455(a) does not explicitly require knowledge. Furthermore, the terms of section 455(a) are mandatory and self-executing; the judge must recuse himself where there is an appearance of partiality regardless of whether a motion to recuse had been made.

■ The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality. *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir.1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge.

This rule may seem harsh to the litigant who has fairly won a judgment and is deprived of it because the judge is charged with knowledge of an interest in the case. It also presents problems with regard to the finality of judgments by allowing a party to overturn a judgment rendered months or years earlier based on the appearance of partiality, even though the judge was in fact completely impartial. Such difficulties led the Seventh Circuit to hold that disqualification under section 455(a) runs only from the time that a recusal motion is made or granted. *United States v. Murphy*, 768 F.2d 1518, 1539 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986).

■ This court, however, has held that a party may move to vacate a judgment based solely on an appearance of partiality existing at the time the judgment was rendered. *Hall*, 695 F.2d at 179–80. Of course, when the party seeking recusal knows or should know of the facts on which recusal is based he must make a timely motion to disqualify or lose his right to do so. *Delesdernier v. Porterie*, 666 F.2d 116, 121–23 (5th Cir.), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982). In the present case the motion by HSAC was timely. *Health Services*, slip op. at 5. In *Hall* we vacated a judgment entered by a magistrate whose law clerk had accepted employment with a law firm representing the plaintiffs. Although there was no suggestion of actual partiality, we held that the appearance of partiality alone required the judgment to be vacated. *Id.* at 180. Although *Hall* did not involve constructive knowledge, the con-

structive knowledge rule we adopt serves the same ends served by *Hall.* In *Hall* the magistrate failed to recognize that his law clerk's conflict of interest created an appearance of impropriety; in the constructive knowledge situation the judge fails to perceive or recall the facts creating the appearance of impropriety. The constructive knowledge rule, like *Hall,* discourages a judge from ignoring or failing to investigate a possible conflict of interest.

 Because of the harsh consequences that can result, knowledge of facts requiring recusal should not be lightly imputed to a judge. Where a reasonable person would only speculate that a judge might have actual knowledge of the facts, constructive knowledge does not exist. In the present case, however, an objective observer would firmly expect that Judge Collins would have actual knowledge of Loyola's interest in the case. The district court so found. Judge Collins attended a number of meetings in which Loyola's negotiations with Liljeberg and St. Jude were discussed. These meetings took place as late as November 1981, just two months before the trial. Furthermore, Judge Collins was sent written material which clearly disclosed Loyola's interest in the litigation. At the very least, a reasonable observer would expect that Judge Collins would remember that Loyola had had some dealings with Liljeberg and St. Jude and seek to ascertain the nature of these dealings. This is not to suggest that Judge Collins was other than completely candid in denying any recollection of these dealings. It is merely to say that the failure of a judge to recall or perceive information which he had been recently exposed to on a number of occasions would not be expected by the objective observer. The district court properly found that Judge Collins had constructive knowledge of Loyola's interest.

The district court erred, however, in concluding that recusal due to constructive knowledge was barred by the law of the case doctrine. The Fifth Circuit opinion remanding this case did not explicitly limit the remand to the question of actual knowl-edge. The evidence suggesting constructive knowledge was not before the court at that time. Assuming that the remand order had been limited to the actual knowledge issue, the law of the case doctrine would not apply because the evidence developed on remand was substantially different. *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967).

III

The determination that Judge Collins' constructive knowledge of Loyola's interest requires his recusal under section 455(a) means that the district court's supplemental order denying HSAC's motion to vacate the judgment and grant a new trial must be reversed. The original judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

ORIGINAL JUDGMENT VACATED, SUPPLEMENTAL ORDER REVERSED and REMANDED.