UNITED STATES of America,
Plaintiff–Appellee,

v.

George Robert BOSCH, Jr.,
Defendant–Appellant.

No. 88–5150.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1990.

Decided Dec. 9, 1991.

Alison Minet Adams, Santa Barbara, Cal., for defendant-appellant.

John S. Gordon, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, Chief Judge, O'SCANNLAIN and RYMER, Circuit Judges.

WALLACE, Chief Judge:

Bosch appeals from his conviction on eight charges related to cocaine trafficking and money laundering. He argues that the district judge should have recused himself, on the ground that the prosecutor had served as the judge's law clerk. Bosch also contends that he did not receive effective assistance of counsel, that the district court erred in allowing a government witness to testify as an expert, and that there was insufficient evidence to convict him on many of the counts. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

Bosch worked at his father's investigative and Hispanic services agency in Glendale, California. Through this business, Bosch and his father became involved with a number of Colombian drug dealers. After being arrested, two of these dealers agreed to cooperate with the government in its investigation into drug trafficking and money laundering. In the course of this investigation, government officials learned that Bosch and his father had assisted the dealers by providing numerous support services integral to the dealers' cocaine trafficking operation. For example, Bosch's father provided false business papers documenting a fictitious cattle sale in South America so that the dealers could launder the proceeds of their drug sales through a corporate bank account, and helped arrange and provide documentation for a marriage involving one of the dealers for immigration purposes. In addition, Bosch provided a house for the dealers in which they stored cocaine and money, rented various cars for the dealers that were used to confuse police officers conducting surveillance, and provided false identification and a fraudulent social security card to one of the dealers.

Finally, one of the dealers participated in an undercover investigation by introducing Bosch's father to a government agent, identifying the agent as a fellow cocaine dealer. The agent explained that he needed false identification and fraudulent corporate documentation that could be used to launder drug money. Bosch and his father thereafter provided the agent with false identification, a social security card, and

phony corporate certificates and resolutions.

On August 20, 1986, Bosch, his father, and three other defendants were charged in a 12-count indictment. The government charged Bosch in eight of these counts, alleging that he conspired to aid and abet cocaine trafficking through the provision of support services, and that he unlawfully possessed and transferred false identification documents and counterfeit social security cards. A jury convicted Bosch on all eight counts.

## II

Bosch first contends that we should reverse his conviction because the district judge did not recuse himself from the trial pursuant to 28 U.S.C. § 455(a). Bosch argues that the judge's impartiality might reasonably be questioned on the grounds that the prosecutor had served as the judge's law clerk and the two had maintained a close relationship.

■ Because Bosch raises this claim for the first time on appeal, we must first address the effect of his failure to move for recusal at the trial level. Previously, we have held that "timeliness cannot be disregarded in all cases involving the delicate matter of disqualification under section 455," while leaving open the question whether timeliness may be disregarded in exceptional circumstances. *United States v. Conforte*, 624 F.2d 869, 880 (9th Cir.) (*Conforte*), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Similarly, in *Salmeron v. United States*, 724 F.2d 1357 (9th Cir.1983), we denied a party's request to remand the case to a different judge based on alleged bias, because the party "failed to raise th[e] claim below, and because he fail[ed] to specify any facts that would support an allegation of bias." *Id.* at 1365 n. 5, *citing Conforte*, 624 F.2d at 869. In this case, Bosch was aware of the alleged grounds for recusal at the time of his motion for a new trial, and therefore could knowledgeably have raised the issue at that time. *Conforte* and *Salmeron* would therefore support a refusal to hear his claims now.

Without reference to *Conforte* or *Salmeron*, we subsequently stated that a party's "failure to move for recusal at the trial level does not preclude his raising the issue on appeal." *In re Manoa Finance Co.*, 781 F.2d 1370, 1373 (9th Cir.1986) (*Manoa*), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). In formulating its rule, *Manoa* relied on *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir.1980). *See Manoa*, 781 F.2d at 1373. In *Sibla*, we held that a party's failure to move for recusal "will significantly affect the appellate standard of review," and that a party who made no motion in the trial court "will bear a greater burden on appeal in demonstrating that the judge committed reversible error in failing to grant recusal under section 455." 624 F.2d at 868. Thus, even assuming that Bosch may raise his section 455 recusal claim for the first time on appeal, following *Sibla*, we would review the district court's failure to recuse himself under the plain error standard. *See id.*

■ "Plain error will be found only if the error was highly prejudicial and there was a high probability that the error materially affected the verdict." *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir.) (*Anguiano*) (quotation omitted), *cert. denied*, 493 U.S. 969, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989). Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, one which we invoke "'only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process.'" *Id.*, *quoting United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986).

Bosch contends that several excerpts from the trial transcript demonstrate that the district judge was biased in favor of the prosecutor, and that this bias deprived Bosch of the benefit of an impartial trial. For example, Bosch argues the district judge demonstrated an intolerable level of bias when he commented that he thought of the prosecutor, a former law clerk, as a son. But a close analysis of these excerpts shows that the judge did not favor the prosecutor in any way. Although he ac-

knowledged that he felt close to the prosecutor, the judge stated that "[h]e's never had any special consideration from me. As a matter of fact, it was quite the opposite." Later, the judge commented that "I would be very critical of [the prosecutor], as I would have, as I say, one of my sons." These remarks fail to demonstrate that Bosch suffered any prejudice, let alone "a miscarriage of justice."

Bosch also refers to a sidebar conference at which defense counsel complained about the prosecutor's tardy delivery of trial documents, and the judge stated that it was "not like [the prosecutor] to do that." Because the prosecutor agreed to forego addressing matters raised by these documents until defense counsel had sufficient time to prepare, however, Bosch suffered no prejudice. Bosch further points to the judge's comment at a post-trial hearing that he wanted to "make things easier" for the prosecutor as evidence of prejudice. At that hearing the judge was ruling on the prosecutor's request that sentencing go forward immediately, because his schedule made it impossible for him to respond to defense counsel's motion for an evidentiary hearing at that time. Far from favoring the prosecutor, the judge ruled in favor of the defense and directed the prosecutor to prepare for the evidentiary hearing. At the same time, however, the judge acknowledged the prosecutor's time constraints, and therefore directed the defense to be clear and concise in drafting their papers to "make things easier" on the prosecutor. Read in context, these remarks do not show that Bosch was prejudiced in any manner.

Finally, Bosch argues that the degree of the district judge's impatience with defense counsel throughout trial is an illustration of actual prejudice. Admittedly, the judge became exasperated with defense counsel on occasion, but we conclude that such exasperation was explainable in light of the sometimes irrelevant and duplicative testimony attempted to be introduced by the defense. The judge's occasional impatience does not show bias.

Bosch has failed to demonstrate that the district judge was biased against the defendant, or that any alleged bias resulted in actual prejudice. It is clear, therefore, that Bosch has failed to demonstrate that the district judge's failure to recuse himself was "highly prejudicial and there was a high probability that [any] error materially affected the verdict." *Anguiano,* 873 F.2d at 1319 (quotations omitted). Thus, Bosch did not show plain error.

## III

Bosch next argues that his conviction should be reversed because he was denied effective assistance of counsel at trial. We decline, however, to reach the merits of Bosch's ineffective assistance of counsel claim. We have held previously that "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. 2255." *United States v. Birges,* 723 F.2d 666, 670 (9th Cir.), *cert. denied,* 466 U.S. 943, 469 U.S. 863, 104 S.Ct. 1926, 105 S.Ct. 200, 80 L.Ed.2d 472, 83 L.Ed.2d 131 (1984). Collateral attack is the preferred method because "such a claim cannot be advanced without the development of facts outside the original record." *Id.*

## IV

Bosch next argues that the district court erred in allowing Newbrough, a special agent with the Internal Revenue Service, to testify as an expert on cocaine trafficking and to state his opinion that Bosch's activities aided and abetted the distribution of cocaine. "The decision to admit expert testimony is committed to the discretion of the court and will not be disturbed unless manifestly erroneous." *United States v. Kinsey,* 843 F.2d 383, 388 (9th Cir.), *cert. denied,* 487 U.S. 1223, 488 U.S. 836, 108 S.Ct. 2882, 109 S.Ct. 99, 101 L.Ed.2d 916, 102 L.Ed.2d 75 (1988). Bosch's trial counsel did not object to Newbrough's testimony. We, therefore, review for plain error. *See* Fed. R.Evid. 103(d); Fed.R.Crim.P. 52(b); *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986).

Bosch first argues that Newbrough's testimony violated Federal Rule of Evidence 702, because Newbrough testified beyond his expertise when he opined that Bosch's activities aided the distribution of cocaine. We recently rejected this argument, however, in ruling on the appeal brought by Bosch's father from the same trial. *See United States v. Bosch*, 914 F.2d 1239, 1242–43 (9th Cir.1990) (*Bosch, Sr.*). We stated that "[b]ecause Newbrough had training and experience in conducting narcotics investigations and explained a basis for his opinion that would help the jury determine [the father's] role in the charged offense," his testimony did not violate Rule 702. *Id.* at 1243. We conclude that this reasoning applies with equal force to Bosch.

Bosch further contends that the testimony violated Federal Rule of Evidence 704, which prohibits an expert witness from offering an opinion on whether the defendant had the mental state constituting an element of the crime charged. In deciding the appeal brought by Bosch's father, however, we observed that "Newbrough's testimony, rather than opining on Bosch's mental state or his guilt, was directed primarily at whether Bosch's activities helped in the distribution of cocaine." *Id.* We therefore reasoned that the testimony did not violate Rule 704. *Id.* at 1244. We adopt this holding in rejecting Bosch's identical claim.

There was no abuse of discretion in admitting Newbrough's testimony. Therefore, it follows that Bosch did not demonstrate plain error.

### V

Finally, Bosch contends that there was insufficient evidence to convict him on a number of the counts with which he was charged. Viewing the evidence in the light most favorable to the government, we must determine whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Adler*, 879 F.2d 491, 495 (9th Cir.1988), *quoting Jackson v.*

*Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Bosch first argues that he should not have been convicted on the two counts charging a conspiracy to aid and abet the possession and distribution of cocaine, because there was insufficient evidence to demonstrate that he knew of the conspiracy or shared its objectives. The government, however, presented a great deal of evidence from which a rational jury could have found that Bosch knew of and participated in the cocaine trafficking conspiracy. In addition to the evidence outlined earlier, after providing a house for one of the drug dealers to store cocaine and money, Bosch entered a closet in the house that contained 40 pounds of cocaine. Furthermore, Bosch heard his father tell the dealer that he knew the dealer was distributing cocaine. From this and other similar evidence, a rational jury was justified in finding that Bosch knowingly joined the conspiracy.

Bosch next argues against his conviction for conspiracy to aid and abet the distribution of cocaine to the government agent. He contends that because none of the conspirators actually distributed cocaine to the government agent, there is insufficient evidence to convict on that conspiracy charge. According to Bosch, it was legally impossible for the conspirators to conspire to aid and abet a nonexistent offense. We ruled against an identical argument in the related appeal by Bosch's father, however, observing that "[w]e have 'rejected the doctrine of legal impossibility as a defense to a charge of conspiracy.' " *Bosch, Sr.*, 914 F.2d at 1241, *quoting United States v. Everett*, 692 F.2d 596, 599 (9th Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Because the conspirators had agreed to commit the offense and one of them had done an overt act in furtherance of the agreement, there was sufficient evidence to convict Bosch on this count. *See id.*

Finally, Bosch contends that insufficient evidence existed to convict him of conspiracy to possess false identification documents with the intent to defraud the United States. Bosch relies on *United*

*States v. Murphy,* 809 F.2d 1427 (9th Cir. 1987), in arguing that the government failed to prove that he had the intent to defraud the United States. In *Bosch, Sr.,* we relied on *Murphy* in holding that there was insufficient evidence to convict Bosch's father of conspiracy to defraud the United States by filing false currency transaction reports. Because *Murphy* held that there was no duty to report the source of money on these reports, we concluded that the evidence was insufficient to convict Bosch's father of defrauding the United States by failing to provide such information. *See Bosch, Sr.,* 914 F.2d at 1242.

In this case, Bosch relies on *Murphy* in arguing against his conviction for conspiracy to defraud the United States through the possession of false identification documents. But *Murphy,* which deals with the duty to disclose information relating to currency transaction reports, is of no help to Bosch. The evidence admitted demonstrated that Bosch knowingly possessed and distributed a number of false identification documents and counterfeit social security cards, and thus intended to provide false information to defraud the government.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, dissenting:

Mr. Justice McKenna, a former member of this Court, wrote for the Supreme Court of the United States almost three-quarters of a century ago, "nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient," *Berger v. United States,* 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481 (1921). Because the institutional integrity of the federal courts requires scrupulous protection of public confidence in the judicial process, the standards by which federal judges must gauge their own impartiality are especially strict. Federal judges must recuse themselves when their impartiality might reasonably be questioned. 28 U.S.C. § 455(a).[1] Given the rigor of those standards and the record before us, I believe that the trial judge's failure to disqualify himself in this case was indeed "plain error." I therefore respectfully dissent from Part II of the court's opinion and from the decision to affirm.

## I

As a threshold matter, I should emphasize that I do not disagree with the court's application of the relatively deferential "plain-error" standard of review. Bosch has conceded that he became aware of the prosecuting attorney's prior relationship with the trial judge during the pendency of the proceedings on his motion for a new trial, if not before. Nonetheless, he made no effort—either at that time or through any subsequent motion—to put the issue before the district court or to seek the judge's recusal. *Cf. Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863–64, 108 S.Ct. 2194, 2203–04, 100 L.Ed.2d 855 (1988) (appropriate for litigant to raise recusal issue in motion to set aside judgment). Only after obtaining new counsel did Bosch decide to pursue the issue, and he has raised the question for the first time on appeal.

We have repeatedly held that a motion for recusal under 28 U.S.C. § 455 must be raised in a timely fashion. *Preston v. United States,* 923 F.2d 731, 733 (9th Cir. 1991); *Molina v. Rison,* 886 F.2d 1124, 1131 (9th Cir.1989); *United States v. Conforte,* 624 F.2d 869, 880 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). The reasons for this rule are obvious:

---

1. Other provisions designed to ensure the integrity and impartiality of judges and the judicial process are codified at 28 U.S.C. § 144 (requiring judge's recusal upon timely showing of bias or prejudice); 5 U.S.C. § 3110, 18 U.S.C. § 1910, 28 U.S.C. § 458 (barring nepotism in judicial hiring and appointments); 28 U.S.C. §§ 454, 632, 955 (outlawing the practice of law by judges, magistrates, and court clerks respectively); 18 U.S.C. §§ 203, 205, 291 (respectively barring sitting judges from receiving or soliciting unauthorized compensation, from acting as agents or attorneys in actions against the United States, and from purchasing claims against the United States at less than face value). We are concerned only with 28 U.S.C. § 455 here.

We require recusal motions to be lodged in a timely fashion because the absence of such a requirement would result in increased instances of wasted judicial time and resources (*In re International Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir.1980)) and a heightened risk that litigants would use recusal motions for strategic purposes (*Ex parte American Steel Barrel Co. and Seaman*, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913)). While no per se rule exists regarding the time frame in which recusal motions should be filed after a case is assigned to a particular judge, if the timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable promptness after the ground for such a motion is ascertained. *Cf. United States v. Furst*, 886 F.2d 558, 581–82 n. 30 (3d Cir.1989) (motion to recuse judge from sentencing timely where movant "did not unreasonably delay in filing ... motion"), *cert. denied*, 493 U.S. 1062, [110 S.Ct. 878, 107 L.Ed.2d 961 (1990)].

*Preston*, 923 F.2d at 733. Moreover, a prospective appellant has an obligation to develop the factual record to support his claim, and where he fails to meet that obligation in the trial court, effective appellate review is usually not possible. *See In re Muller*, 851 F.2d 916, 920 (7th Cir.1988) (appellant must develop factual record in trial court to support claim of judicial bias under 28 U.S.C. § 455), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989); *see also Salmeron v. United States*, 724 F.2d 1357, 1365 n. 5 (9th Cir. 1983); Fed.R.App.P. 10(b)(2) (appellant must develop factual record for appeal).

Failure to raise the issue of judicial bias in the district court does not necessarily bar a litigant from raising the issue on appeal. Indeed, we have explicitly held that a litigant *can* raise the issue for the first time on appeal. *See In re Manoa Finance Co.*, 781 F.2d 1370, 1373 (9th Cir. 1986) (per curiam), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir.1980). However, as we explained in *Sibla* and as the majority points out, failure to present the issue in a timely fashion at trial "will significantly affect the appellate standard of review" and will require a litigant to "bear a greater burden on appeal in demonstrating that the judge committed reversible error in failing to grant recusal under section 455." *Sibla*, 624 F.2d at 868, *quoted ante* at 1548. It is well settled that when a defendant fails to raise a contemporaneous objection to a decision in the district court, a subsequent appellate challenge to that decision is subject to plain-error review. *See, e.g., United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986); *see also* Fed.R.Crim.P. 52(b); Fed.R.Evid. 103(d).

In light of these considerations, I agree with the court's application of the plain-error standard. I disagree only with the court's analysis under that standard.

## II

### A

Bosch has identified three incidents that demonstrate the appearance of partiality by the trial judge in favor of his former law clerk, Assistant United States Attorney Gordon.

The first is a comment that the judge made during post-trial proceedings in response to a complaint by defense counsel regarding the court's resolution—in Mr. Gordon's favor—of a scheduling conflict presented by Mr. Gordon. After granting the prosecution's request for an extension of time and after denying Bosch's request for a release on bail in the interim,[2] the judge explained:

[Gordon] is a friend of mine, as you know, *a dear friend.* He was my law

---

**2.** The majority mistakenly suggests that "the judge ruled in favor of the defense" on this matter. *Ante* at 1553. In fact, the judge granted the prosecution's request and denied the defendant's request. The majority's confusion apparently stems from the misimpression, conveyed by part of the transcript, that only one motion was before the court, that that motion was the prosecution's request for immediate sentencing, and that the judge denied it. *See* Reporter's Transcript at 23–30, *United States v. Bosch*, No. 86–746 (C.D.Cal. Nov. 16, 1987).

clerk for a while. And such is the juxtaposition of the people in this building that I don't get to see him indeed nearly as often as I'd like to. But I hear from the grapevine that he really is being shoved around up there. He's being worked very, very hard. I don't think I've had a long talk with him in months. Maybe not even this year. But I hear in the courthouse grapevine how those things go. And he's under a lot of stress.

And it is a simple fact of the matter—I was pulling his leg a little bit about how many people they have upstairs—that he tried this case, and there really isn't any other person up there that could meaningfully address himself or herself to the issues that you gentlemen are raising other than this fellow. *And just out of humanitarian milk of kindness I want to make things easier for him,* if that's possible.

. . . He is one of the brightest lawyers I've ever met in my life, and I have no doubt [that he is competent enough and professional enough to withstand it all].

Reporter's Transcript at 29–30, *United States v. Bosch,* No. 86–746 (C.D.Cal. Nov. 16, 1987) (emphasis added). On its face, this comment demonstrates the judge's strong affection for and close friendship with the prosecuting attorney. It also demonstrates that the judge had feelings of sympathy for Gordon and a desire "to make things easier for him"—a desire based on considerations neither relevant nor related to Bosch's trial.[3]

The second incident occurred during the evidentiary hearing on Bosch's motion for a new trial, when defense counsel attempted to apologize to the court for some apparently inappropriate filings. The trial judge responded:

If you want to apologize to anybody, do it to Mr. Gordon outside, because he is a very honorable public servant who has— he graduated at the very top of his class at Stanford, Number 5, I think, and nev-

er had any desire in his life, as far as I know, but to serve the Government of the United States.

Of course he was a law clerk in my chambers, most valued, and a fellow whose companionship I have been deprived of by reason of his being in the U.S. Attorney's Office. He's never had any special consideration from me. As a matter of fact, it was quite the opposite. *I think as a good father would—and I feel like that about him—looked at his performance with a particularly jaundiced eye.*

*Id.* at 16527 (Mar. 15, 1988) (emphasis added). Here, the trial judge states that his affection and admiration for the young prosecutor amounted to the special feelings of a father for his son. The statement contradicts what it attempts to prove: that the judge can treat Attorney Gordon as he would any other attorney who might appear before him. We cannot treat our children as strangers, no matter how we might try. Although the judge's affection for Gordon may not in fact have been as strong as the parent-child bond, or as difficult to disregard, I reluctantly conclude that the statement created an appearance of bias.

A third incident to which Bosch draws our attention also occurred during the evidentiary hearing on Bosch's motion for a new trial. In response to the defense's allegation that Gordon had committed prosecutorial misconduct, the trial judge responded:

I reject the idea that there was prosecutorial misconduct in this case. I thought Mr. Gordon's approach to the case was understated, indeed, and as I said earlier, I have looked at his performance in the very few times that I've seen him here—it's the only trial he's ever had in my court since he left many years ago, and indeed, to the best of my recollection, only two social contacts since then, which I think is a real shame. He left

**3.** Unlike the majority, I read the judge's statement that he would like "to make things easier" for Gordon to be a reference to his decision to grant Gordon's request for an extension of

time—not to be a reference to his instructions to the defense on how they should draft their papers. *See ante* at 1553.

my chambers in September of '84, and I don't see enough of him. *But I would be very critical of him, as I would have, as I say, one of my sons.* He tried the case in an understated manner. I thought his argument to the jury was direct. It was not inflammatory or anything like that. I'd have sat on him like an 800 pound gorilla if he had done anything that I thought was out of line.

*Id.* at 58–59 (emphasis added). Again, this comment appears to deny what it purports to prove: that the judge had a normal, professional relationship with the prosecutor that allowed him to judge that attorney's conduct with the same eyes with which he would judge any other attorney's conduct.[4] The judge's statements would give a reasonable observer cause to believe that the judge shared an extraordinarily close friendship with the prosecutor, who had served as his law clerk only two years before the commencement of Bosch's trial.

### B

To explain why, in light of these comments, the judge's failure to withdraw constituted plain error, I must first explain precisely what, in my view, plain-error analysis entails.

According to our decision in *Bustillo:* "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 ... (1979). Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. *Id.* 789 F.2d at 1367. As the Supreme Court similarly explained in *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985):

The plain-error doctrine ... tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeal to correct only "particularly egregious errors," *United States v. Frady,* 456 U.S. 152, 163 [102 S.Ct. 1584, 1592, 71 L.Ed.2d 816] (1982), those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson,* 297 U.S. [157, 160 [56 S.Ct. 391, 392, 80 L.Ed. 555] (1936)].

470 U.S. at 15, 105 S.Ct. at 1046 (footnote omitted).

In other words, the plain-error standard contemplates a two-part analysis. The error must be both "plain"—i.e., "particularly egregious," implicative of "substantial rights"—and either highly prejudicial to the appellant or seriously corrosive of the integrity or public reputation of the judicial process. *See id.* at 16–17 n. 14, 105 S.Ct. at 1047 n. 14 (similarly describing plain-error standard); *United States v. Hutson,* 843 F.2d 1232, 1238 (9th Cir.1988) ("This court has consistently applied a two-part test similar to that in *Young.*") (citing numerous Ninth Circuit cases that have undertaken plain-error review).[5]

---

4. Bosch also points to a fourth incident: a very brief comment that the judge made during a trial sidebar conference after defense counsel complained about the prosecution's tardy delivery of certain documents. *See ante* at 1548. The judge remarked: "That's not like Gordon to do that.... It really isn't." Reporter's Transcript at 4, *United States v. Bosch,* No. 86–746 (C.D.Cal. Nov. 5, 1986). The comment is notable because, as the judge would later explain, Gordon had never tried a case in his court before. The comment, therefore, cannot be based on the judge's prior courtroom experience with the prosecutor but rather must be based on an *expectation* of how Gordon would behave.

Bosch also argues that the judge demonstrated a disproportionate degree of impatience with the defense during the course of the trial. As the majority points out, there is some evidence of impatience in the trial transcript, *see ante* at 1554–1555, but whether that impatience may be attributed to a bias in favor of the prosecution is pure speculation. None of the isolated episodes in question is facially indicative of bias.

5. It is clear, therefore, that the term "plain error" is something of a misnomer. Standing alone, the "plainness" of an error is never enough to warrant reversal. Rather, the error must be both especially plain (i.e., egregious) *and* especially severe. Indeed, as the Supreme Court itself has acknowledged, if plainness alone were sufficient, appellate courts would be in the anomalous position of reversing criminal

Under this bipartite definition, I believe that the judge's failure to disqualify himself constituted plain error.

### C

First, it is simply beyond dispute that judicial bias affects substantial rights. The constitutional assurances of due process and an independent judiciary are both worth little without the further assurance of what Edmund Burke has termed "the cold neutrality of an impartial judge." Indeed, the Supreme Court has unanimously held that "[t]rial before 'an unbiased judge' is essential to due process." *Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971) (per curiam) (quoting *Bloom v. Illinois*, 391 U.S. 194, 205, 88 S.Ct. 1477, 1484, 20 L.Ed.2d 522 (1968), and *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S.Ct. 499, 505, 27 L.Ed.2d 532 (1971)).

Furthermore, in light of the purpose and plain meaning of section 455, the judge's failure to withdraw was, in my view, a particularly egregious misjudgment. Section 455 states in pertinent part:

(a) Any justice, judge, or magistrate of the United States, *shall* disqualify himself in any proceeding in which his impartiality *might reasonably be questioned.*

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party ...

\* \* \* \* \* \*

convictions in cases involving " 'harmless plain errors.' " *Young*, 470 U.S. at 16–17 n. 14, 105 S.Ct. at 1047 n. 14. Not only would such an approach defy commonsense, but it would also create a perverse incentive for many criminal defendants, who would actually benefit by not raising their most serious objections in the district court.

**6.** Section 455 is divided into two parts: subsection (a) is a waivable catch-all provision, and subsection (b) lists specific grounds for disqualification that are not waivable. *See* 28 U.S.C. §§ 455(a), (b). One need not decide which of the two subsections applies in this case, however, because the trial judge never disclosed his feelings toward Attorney Gordon. Thus, even if "the ground for [the judge's] disqualification

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: ...

(ii) Is acting as a lawyer in the proceeding;

\* \* \* \* \* \*

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises *only* under subsection (a), waiver may be accepted *provided it is preceded by a full disclosure on the record* of the basis for disqualification.

28 U.S.C. § 455 (1988) (emphasis added).[6] Under the plain and expansive terms of this statute, a federal judge has little discretion over the issue of recusal; withdrawal is *mandatory*, whether or not a party seeks it, if the evidence of bias *might*—when viewed objectively—cast the judge's impartiality in doubt. *See Manoa Finance*, 781 F.2d at 1372–73 (section 455 "requires the disqualification of federal judges 'if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned' " and "[alt]hough section 455 is stated in terms of a self-enforcing obligation upon the judge, it may be invoked by a party.") (citations omitted).

As the Supreme Court recently explained:

arises only under subsection (a)"—and not also under subsection (b)(1)—there was (and could be) no waiver in this case. *Id.* § 455(e).

This raises another important point. Citing *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1569 (Fed.Cir.1989), the government contends that the judge had no duty to disclose his "great personal regard for AUSA Gordon" before trial. Brief for Appellee at 25. This statement is but a half-truth. Section 455 imposes *no duty to disclose per se*, but if the ground for disqualification is waivable, then it must be disclosed under subsection (e) in order to effect that waiver. Subsection *(a)*, therefore, has a de facto disclosure requirement. Subsection *(b)*, on the other hand, effectively imposes no duty to disclose because disclosure is irrelevant where recusal is mandatory.

"The goal of section 455(a) is to avoid *even the appearance* of partiality.... Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a *reasonable person*, knowing all the circumstances, would expect that the judge would have actual knowledge."

*Liljeberg*, 486 U.S. at 860–61, 108 S.Ct. at 2202–03 (quoting *Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir.1986)) (holding that scienter is not required for disqualification under section 455(a)) (emphasis added); *see also id.* at 865, 108 S.Ct. at 2205 ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.") (citing Congressional reports). In short, in order to conclude that it was not improper for the trial judge to have presided over Bosch's trial, one must conclude that it is *unreasonable even to question* his impartiality. In light of the judge's strong affection for the prosecutor, as expressed by his comments during the proceedings, that conclusion is simply unsustainable.

I do not mean to suggest in any way that the judge's conduct was outrageous, unreasonable, or insensitive.[7] Indeed, I am satisfied that there is nothing in this record which demonstrates actual bias of the trial judge. The egregiousness of his failure to recuse is simply a function of the strictness of the obligation and the breadth of the statute's terms. Indeed, Congress amended the Judicial Code in 1974 "to broaden and clarify the grounds for judicial disqualification." Act of December 5, 1974, Pub.L. No. 93–512, § 1, 88 Stat. 1609, 1609 (1974). As now written, section 455 codifies the standards embraced by the ABA Code of Judicial Conduct. *See* H.R.Rep. No. 1453, 93d Cong., 2d Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6353 (purpose of 1974 amendments to section 455 is to make law conform to ABA canon on disqualification so that "both the statutory and the ethical standard [are] virtually identical" and so that federal judges are "no longer subject to dual standards").

The ABA standard is firm and uncompromising: it urges judges to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary";[8] it implores them not to "convey or permit others to convey the impression that they are in a special position to influence the judge";[9] and it specifically advises that when an attorney in a case is a friend of the judge, the judge should disqualify himself if (a) the judge feels incapable of disregarding the relationship and (b) others cannot reasonably be expected to believe that the relationship will be disregarded.[10] The trial judge's comments on the record in this case demonstrate that he could not ignore his close

---

**7.** Nor do I mean to suggest that a federal judge may never preside over proceedings involving a former law clerk. The issue, as Bosch points out, is not that Gordon was a former law clerk but rather that he was regarded by the judge, based on the judge's own statements in the record, as an especially dear friend and as one of the judge's own sons. *See* Judicial Conf. Advisory Comm. on Judicial Activities, Advisory Op. 38 (1974) (re: *Disqualification of a judge whose son is an Assistant United States Attorney*).

**8.** *ABA Code of Judicial Conduct for United States Judges* Canon 2 A (1987) [hereinafter *Code of Judicial Conduct*]; *see also id.* Canon 1.

**9.** *Code of Judicial Conduct* Canon 2 B; *see also id.* Canon 3 C 1:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) The judge has a personal bias or prejudice concerning a party ...

\* \* \* \* \* \*

(d) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

\* \* \* \* \* \*

(ii) is acting as a lawyer in the proceeding.

**10.** *Code of Judicial Conduct* Canon 3 C 1 annot.; *see also* Judicial Conf. Advisory Comm. on Judicial Activities, Advisory Op. 38 (1974) (re: *Disqualification of a judge whose son is an Assistant United States Attorney*); Judicial Conf. Interim Advisory Comm. on Judicial Activities, Advisory Op. 11 (1970) (re: *Judge acting in controversy where friend of long standing or friend's law firm is counsel*).

relationship with the prosecutor, and they dispel the objective impression of neutrality.

### D

Turning to the second prong of the plain-error test, it is equally clear that the judge's failure to withdraw—given the evidence of possible bias—undercuts "the integrity and reputation of the judicial process," *Bustillo*, 789 F.2d at 1367, and "'seriously affect[s] the fairness ... of judicial proceedings,'" *Young*, 470 U.S. at 15, 105 S.Ct. at 1046 (quoting *Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392 (1936)). Indeed, the Supreme Court has indicated that the right to an impartial judge ranks among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 827–28 n. 8, 17 L.Ed.2d 705 (1967) (citing *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)); *see also*, *United States v. Perkins*, 937 F.2d 1397, 1407 n. 2 (9th Cir.1991) (O'Scannlain, J., dissenting). Under *Chapman*, if the judge's failure to recuse was egregiously erroneous, as I have suggested, then it was prejudicial (and hence, plain error) per se.

Bosch, however, need not rely on *Chapman* to prevail here. In my view, the appearance of judicial bias is clearly sufficient to undercut the integrity of the process that led to Bosch's conviction. Standing alone, the trial judge's comments create an appearance of prejudice that casts a taint upon the verdict. In reaching the opposite conclusion, the majority accepts at face value the judge's assurances that he "'would be very critical of [Gordon]'" and that he has never shown Gordon "'any special consideration.'" *Ante* at 1548 (quoting transcripts). The law on judicial bias, however, is especially strict precisely because one cannot accept the challenged judge's subjective statements at face value. *See* H.R.Rep. No. 1453, 93d Cong., 2d Sess. 4–5, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6354–55 (Section 455(a) "sets up an objective standard, rather than the subjective standard set forth in the [pre–1974] statute through use of the phrase 'in his opinion.' This general standard is designed to promote public confidence in the impartiality of the judicial process...."). By definition, bias clouds judgment, and thus, it is the mere objective *appearance* of bias that disqualifies the judge. *See* 28 U.S.C. § 455(a); *Code of Judicial Conduct* Canon 3 C 1. An assurance from one who objectively appears to have clouded judgment is hardly reassuring.

Nor does it matter, as the government contends, that the trial judge only revealed his close relationship with the prosecutor during *post-trial* proceedings. The timing of the revelation does not dilute the sting of a potential bias revealed, and surely the government would not suggest that the judge only developed his strong affection for Gordon during or after the trial.

Ultimately, under the majority's analysis, Bosch cannot prevail because he cannot demonstrate that he suffered any "actual" prejudice. *See ante* at 1548. He cannot prove, in other words, any causal link between the evidence of judicial bias and the verdict or some interim adverse ruling. To hold Bosch to such a standard, however, is to hold him to a standard that in the real world an appellant will almost never be able to meet. Judges who demonstrate bias or an appearance of possible bias rarely tie prejudicial sentiments directly to their rulings; only in the most outrageous case will a judge indicate that he is ruling against a litigant *because of* a bias against that litigant or in favor of his adversary. The law does not forbid only such outrageous cases; it recognizes that bias is a pernicious human quality that operates in subtle ways, and it requires courts to take prophylactic measures to avoid its insidious effects. As Justice Frankfurter explained, "[t]he guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Public Utils. Comm'n v. Pollak*, 343 U.S. 451, 466–67, 72 S.Ct. 813, 822–23, 96 L.Ed. 1068 (1952) (Frankfurter, J., in chambers), *quoted in Liljeberg*, 486 U.S. at 869–70, 108 S.Ct. at 2207.

I do not contend that every litigant who shows on appeal, after failing to raise the issue at trial, that the judge should have recused himself under section 455 is entitled to relief. A litigant who has inexcusably failed to request recusal at trial must make a stronger showing. *See Sibla,* 624 F.2d at 868; *Pau v. Yosemite Park & Curry Co.,* 928 F.2d 880, 885 (9th Cir.1991). However where, as here, the record shows that the judge himself could not have failed to be aware of the basis for recusal, "particularly egregious" error warranting relief has occurred.

### III

In light of the foregoing, I believe that the trial judge's failure to recuse was plain error. I would therefore vacate Bosch's conviction and remand for a new trial before a different judge.