UNITED STATES of America,
Plaintiff–Appellee,

v.

George Humberto BOSCH, Sr.,
Defendant–Appellant.

No. 88–5134.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided Sept. 14, 1990.

Christopher A. Brancart, Brancart and Brancart, Orange, Cal., for defendant-appellant.

John S. Gordon, Asst. U.S. Atty., Deputy Chief, Major Narcotics Section, Los Angeles, Cal., for plaintiff-appellee.

Before HUG, BOOCHEVER and BEEZER, Circuit Judges.

BOOCHEVER, Circuit Judge:

George Humberto Bosch, Sr., appeals his conviction for conspiracy to aid and abet possession with intent to distribute and distribution of cocaine, conspiracy to defraud the United States, and unlawful transfer and possession of counterfeit social security cards. We reverse Bosch's conviction on the count of conspiracy to defraud the United States but affirm the remaining convictions.

## FACTS AND PROCEDURAL HISTORY

Bosch owned and operated an investigative and Hispanic services agency in Glendale, California. Through this business, Bosch became involved with Colombian drug dealers. Evidence indicated that in the course of the association, he provided false business paperwork documenting a fictitious cattle sale in South America so that the dealers could launder the proceeds of their drug sales through one of the dealers' corporate bank accounts; helped to arrange a drug sale; helped arrange and provide documentation for a marriage for one of the dealers for immigration purposes; and, with his son, provided apartments and storage for the dealers and their cocaine, money, and guns.

Two of the dealers were arrested and agreed to plead guilty to lesser charges in exchange for their cooperation with the government in its investigation of cocaine trafficking and money laundering. One of the dealers introduced Bosch to an Internal Revenue Service (IRS) undercover agent, identifying the agent as a cocaine dealer, and asked Bosch to provide them with false identification papers and false cattle sale documentation so that they could launder drug money. Bosch agreed, provided the paperwork, and he and his son assisted the undercover agent to launder what they believed were drug sale proceeds.

On August 20, 1986, Bosch and his son were indicted on charges of conspiracy to possess and to aid and abet possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 2; conspiracy to defraud the United States in violation of 18 U.S.C. § 371; possession of counterfeit social security cards in violation of 42 U.S.C. § 408(g); possession and aiding and abetting possession with intent to transfer and transfer of false social security cards in violation of 18 U.S.C. §§ 2 and 1028(a)(2) and (3); and possession of an identification document with intent that such document be used to defraud the United States in violation of 18 U.S.C. § 1028(a)(4). On November 21, 1986, following a jury trial, Bosch was convicted on all charges. On April 21, 1988, the district court sentenced him to a term of imprisonment of seven years on each of the cocaine conspiracy charges, to be served concurrently, and four years on the remaining charges, to be served concurrently collectively and with the sentence on the cocaine conspiracy charges, with credit for time served. Bosch was further ordered to pay a mandatory special assessment fee of $500 pursuant to 18 U.S.C. § 3013(a). Bosch filed his notice of appeal the same day.

On appeal, Bosch argues that his conviction should be reversed due to insufficient evidence, erroneously admitted testimony, and ineffective assistance of counsel.

## DISCUSSION

### I. Sufficiency of the Evidence

#### A. Conspiracy to Aid and Abet

In assessing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Count two of the indictment charged Bosch and his son with conspiracy to aid and abet the possession of cocaine with intent to distribute,

and conspiracy to aid and abet the distribution of cocaine in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2. Bosch argues that because the undercover IRS agent never possessed or distributed cocaine, no crime of possession or distribution of cocaine occurred. A defendant cannot be convicted of aiding and abetting absent proof that the underlying offense was committed. *United States v. Powell,* 806 F.2d 1421, 1424 (9th Cir.1986). Therefore, according to Bosch, it was legally impossible for the Boschs to conspire to aid and abet a nonexistent offense.

We have "rejected the doctrine of legal impossibility as a defense to a charge of conspiracy." *United States v. Everett,* 692 F.2d 596, 599 (9th Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). In *United States v. Rueter,* 536 F.2d 296 (9th Cir.1976), the defendants were convicted of conspiring to buy drugs from an undercover Drug Enforcement Administration (DEA) agent. The defendants argued "that because DEA policy is against actually providing drugs to buyers in deals such as this one, they could not have possessed it and are entitled to an absolute defense of impossibility." *Id.* at 298. We disagreed, however, finding that the "defendants were convicted of conspiring to violate the law. The conspiracy was complete when the conspirators had agreed to commit the offense and one of them had done an overt act in furtherance of the agreement. The accomplishment of the conspiracy's goal is immaterial to the crime." *Id.* Similarly here, Bosch agreed to aid and abet the possession and distribution of cocaine and overtly acted in furtherance of that agreement. Sufficient evidence existed to support his conspiracy conviction.

#### B. Defrauding the United States

Count three of the indictment charged Bosch and his son with conspiracy to defraud the United States by filing false Currency Transaction Reports (CTRs) and impeding the IRS in collecting taxes and enforcing currency transaction reporting requirements, in violation of 18 U.S.C. §§ 2 and 371, 31 U.S.C. §§ 5313 and 5322, and

31 C.F.R. §§ 103.22 and 103.25. Specifically, the indictments charged that Bosch and his co-conspirators laundered drug sale proceeds using CTRs which did not reveal the true source of the money. Bosch argues that in *United States v. Murphy*, 809 F.2d 1427 (9th Cir.1987), this court held that there was no duty to report the source of money on CTRs. If there was no duty to report that information, he contends, the evidence was insufficient to convict him of defrauding the United States by failing to provide it.

We agree. In *Murphy*, we interpreted the form then used to document currency transactions, and held "that it does not clearly impose a duty to disclose the persons who delivered to [the defendant] the deposited currency." *Id.* at 1430. The CTR form Bosch provides in his reply brief (revised in December 1982 and thus presumably the form used for the transaction at issue here, which occurred in 1983) contains the same language on which we based our opinion in *Murphy*. The government attempts to distinguish *Murphy* by arguing that the indictment against Bosch alleged as one of the objects of the conspiracy the impairment of the IRS' function of collecting income taxes, while "[t]he indictment against Murphy, by contrast, allege[d] no scheme to deprive the government of tax revenue." *Id.* at 1432. As we observed in *Murphy*, however,

> even if the indictment encompassed the defendants' total money-laundering activities, it would still fail to allege a crime under 18 U.S.C. § 371. Money laundering may be socially destructive, but it is not a crime. Illegal acts in a money-laundering scheme can be crimes. We upheld the *Moran* defendant's conviction in part because he advised his co-participants in the laundering scheme to report only a small fraction of their illegal profits on their income tax returns. That is a classic case of conspiring to defraud the United States.

*Id.* (citation omitted) (referring to *United States v. Moran*, 759 F.2d 777 (9th Cir. 1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986)). The government failed to present evidence of any *il-*

*legal* acts within the money laundering scheme involved here. The only overt acts in furtherance of the conspiracy charged in count three of the indictment and proven at trial are failing to identify the source of the laundered money on the CTR form and money laundering activities. The government points to no evidence of a failure to pay taxes because of the fictitious cattle transaction. The evidence thus fails to support a charge of conspiracy to defraud the United States. *Murphy*, 809 F.2d at 1431–32. Bosch's conviction on count three of the indictment, therefore, is not supported by sufficient evidence and must be reversed.

## II. Government Witness Testimony

■ Garry Newbrough, a special agent with the IRS, testified on behalf of the government at trial as an expert summary witness. Bosch claims that the district court abused its discretion by allowing Newbrough to testify beyond his expertise, to testify on the law, and to testify on the issue of Bosch's guilt or innocence. "The decision to admit expert testimony is committed to the discretion of the court and will not be disturbed unless manifestly erroneous." *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir.), *cert. denied*, 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988). Bosch's trial counsel failed to object to Newbrough's testimony. We find, however, that even if there had been an objection, the trial court did not abuse its discretion in admitting Newbrough's testimony.

Bosch claims that Newbrough testified beyond his expertise when he stated his opinion that Bosch's activities aided and abetted the distribution of cocaine. Bosch argues that the government failed to lay a proper foundation for Newbrough's expertise on narcotics trafficking, as opposed to impeding IRS functions. Thus, according to Bosch, under Fed.R.Evid. 702, Newbrough should not have been allowed to opine on a subject which was not within his expertise.

Newbrough testified that in addition to his training as a special agent with the

IRS, he attends a yearly narcotics conference and had conducted in excess of one hundred narcotics investigations. Moreover, Newbrough did not give a sweeping general statement that Bosch aided and abetted cocaine distribution, as Bosch implies, but gave a detailed explanation of activities which in his opinion had that effect:

A. My opinion is that those services rendered would, and did, in fact, aid and abet the distribution of cocaine, in that the renting of houses in selected neighborhoods, the false identification which would impede law enforcement efforts, the different vehicles, et cetera, without these services the distribution of cocaine would be ineffective, yes.

Q. Is that because the cocaine distribution organization was basically Colombian?

A. Yes, sir. Most of these individuals are Colombian. They do not have a command of the language, nor do they have a command of the customs, and thereby don't know where to locate themselves.

That's why the assistance, as provided, is needed.

*United States v. Bosch,* No. CR–86–746–RAG–1 (C.D.Cal.), Reporter's Transcript of Proceedings (RT) at 88–89 (Nov. 5, 1986). Because Newbrough had training and experience in conducting narcotics investigations and explained a basis for his opinion that would help the jury determine Bosch's role in the charged offense, the district court did not abuse its discretion by admitting this testimony. *See United States v. Patterson,* 819 F.2d 1495, 1507 (9th Cir. 1987) ("Expert testimony on the structure of criminal enterprises is allowed to help the jury understand the scheme and assess a defendant's involvement in it.").

Bosch also claims, however, that this testimony violated Rule 704 of the Federal Rules of Evidence which provides in part, "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Fed.R.Evid. 704(b); *accord Kinsey,* 843 F.2d at 388. Newbrough did not explicitly state that Bosch was guilty or that he had the mental state constituting an element of aiding and abetting possession with intent to distribute cocaine. Bosch argues, however, that such an opinion can be inferred from Newbrough's statement that Bosch "did, in fact, aid and abet the distribution of cocaine," when combined with the trial judge's instruction to the jury that "[y]ou may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done." RT at 25–26 (Nov. 19, 1986).

Rule 704, on the other hand, also provides that "[e]xcept as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a); *accord Kinsey,* 843 F.2d at 388. Newbrough's testimony, rather than opining on Bosch's mental state or his guilt, was directed primarily at whether Bosch's activities helped in the distribution of cocaine. *See United States v. Fleishman,* 684 F.2d 1329, 1335–36 (9th Cir.) ("recogniz[ing] the difference between opinions of a defendant's guilt or innocence and expert testimony *regarding the various roles* played by persons involved in illegal enterprises"), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). While Bosch's role in the offense is an ultimate fact, testimony on a defendant's role in the offense generally is admissible. *See United States v. Espinosa,* 827 F.2d 604, 612 (9th Cir.1987) ("In a series of cases, we have upheld admission of a law enforcement officer's expert testimony that the defendant's activities indicated that he acted in accordance with usual criminal modus operandi."), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).

Of course, the extent to which expert testimony may be of assistance to the jury in understanding the evidence is a matter of degree and will vary according to the circumstances of each case. A trial court should not routinely admit opinions such as those admitted in the

present case, but should carefully weigh the testimony's probative value against its possible prejudicial effect.

*Id.* (citations omitted). Here, as Bosch claims, Newbrough's testimony conceivably could be taken as an opinion on the mental state or guilt of Bosch, and thus would have unduly prejudiced the jury. Bosch's trial counsel, however, recognized this and brought out on cross-examination that all the activities on which Newbrough based his opinion would only be criminal if Bosch knew and intended that they be done in furtherance of cocaine distribution, "[a]nd it is the province of the jury to determine whether that has been established beyond a reasonable doubt." Similarly, in addition to the instruction on the inferences that the jury could reasonably draw, "the trial court properly instructed the jury on the weight it might ascribe to opinion testimony given at trial." [1] *Id.* at 613. Therefore, it is unlikely that the jury drew the improper inference that Bosch identifies from Newbrough's testimony, and the admission of this testimony was not an abuse of discretion.

Finally, Bosch claims that Newbrough improperly testified on the legal requirements of filling out a CTR form: "The bank has the responsibility of filling out [the CTR], and if you did it, then your name would appear on the form as the person conducting the transaction." RT at 84 (Nov. 5, 1986). We need not discuss this claim, however, because any error in admitting this testimony was harmless in view of our reversal of Bosch's conviction on count three of the indictment (conspiracy to defraud the United States), the only count which involves the CTR requirements.

## III. Ineffective Assistance of Counsel

■ Bosch maintains that he was denied his constitutional right to effective assistance of counsel. Specifically, Bosch claims that, in light of his trial counsel Victor Palacios' disbarment, Palacios' representation of Bosch was inadequate with respect to pretrial investigation, preparation for tri-

al, trial objections, and jury instructions. "Whether a defendant received ineffective assistance of counsel is a question of law reviewed *de novo.*" *United States v. Ferreira–Alameda,* 815 F.2d 1251, 1253 (9th Cir.1986).

■ "A defendant claiming ineffective assistance of counsel must make a two-fold showing. He must demonstrate (1) that counsel's actions were 'outside the wide range of professionally competent assistance,' and (2) that the defendant was prejudiced by reason of counsel's actions." *United States v. Layton,* 855 F.2d 1388, 1414 (9th Cir.1988) (citing and quoting *Strickland v. Washington,* 466 U.S. 668, 687–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984)), *cert. denied,* 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1989). Pursuant to the first prong of this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). To establish prejudice under the second prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068.

### A. Disbarment

■ The district court discovered in the middle of Bosch's trial that Palacios had been disbarred from practice in the Central District of California and had not properly been readmitted. The court ordered Palacios to confer with his client, and the following day the court asked Bosch whether he wanted to continue with the trial being represented by Palacios. Bosch replied

---

1. The standard limiting instruction given by the district court here was exactly the same as the

instruction given in *Espinosa.* *Compare* 827 F.2d at 613 n. 4 *with* RT at 29 (Nov. 19, 1986).

that he did. The court accepted Bosch's agreement to proceed and stated for the record:

> that the defect, if there is any, in the representation is one that does not have any bearing on the conduct of Mr. Palacios in this trial.
>
> It is my observation that he has very ably represented Mr. Bosch, so far, in this case. And I don't anticipate that it will be any different for the balance of the case.

RT at 5 (Nov. 7, 1986). The trial court found that Palacios was competent, Bosch was apprised of Palacios' disbarment, and he freely elected to proceed with Palacios' assistance. Under these circumstances, Palacios' disbarment has no effect on Bosch's burden under *Strickland.*

### B. Investigation

Bosch maintains that Palacios failed to conduct a reasonable pretrial investigation. Specifically, Bosch argues that there is substantial evidence available through reasonable investigation which would have undermined the credibility of three key prosecution witnesses, whose testimony was the linchpin of Bosch's conviction on the charges that did not involve the undercover agent. Bosch cites to documents in the record which purportedly show that the arranged marriage between Elkin Estrada (one of the drug dealers) and Emelina Torres may not have been a sham devised by Bosch for immigration purposes as Torres testified; that the cattle sale was genuine, contrary to the testimony of Luis Gamboa, one of the drug dealers who cooperated with and testified for the government; and that Efrain Santana, the other drug dealer who cooperated with and testified for the government, had previously used the alias "Nelson Reyes" which Bosch's son was supposed to have invented for him.

#### Sham Marriage

The record contains an affidavit and supporting documents from Emelina Torres' sisters who put up their house as bail for Estrada on Torres' urging. Bosch draws the inference that a genuine relationship existed between Estrada and Torres, since Torres would not imperil her family's home for a stranger.

While that is one inference, it is by no means the only, or even the most likely, inference. The sisters declared that the government required Estrada to put up a family home as bail security, rather than just cash. Estrada may have paid Torres (as his wife) to convince her family (his in-laws) to put up their home for his bail. He also apparently paid to have the property restored to the sisters after he jumped bail and gave them an additional $10,000 "for their trouble." The sisters' testimony, therefore, is of questionable impeachment value.

#### Cattle Sale

The record contains a declaration from Gamboa's accountant who states that, as part of his income tax return for 1983, Gamboa declared a $62,000 profit from a cattle sale which occurred outside of the country. In papers filed with the court, Bosch's subsequent counsel also excerpted portions of recordings made by the IRS undercover agent in which, Bosch claims, he indicated that he knew nothing about the "phony cow transactions" and that Gamboa and the agent admitted to having prepared the paperwork. Thus, according to Bosch, Gamboa was involved with an actual cattle sale and was solely responsible for the fictitious one.

Even assuming a legitimate cattle sale took place, however, it does not follow that Bosch did not fictionalize one. Even if Gamboa provided the idea, Bosch still documented the transaction. The transcript of the undercover tape is not definitive, but can be interpreted to show that Gamboa may have been more involved in the workings of the fictitious cattle sale than he implied in his testimony. The transcript also demonstrates, however, that Bosch admitted to having some involvement with the company which was supposed to have conducted the fictitious sale, but his role (or the role of Gamboa and the undercover agent) is unclear. Thus, while this information may have been of some benefit in impeaching Gamboa, it by no means exon-

erates Bosch, and even its value for impeachment purposes is questionable.

### Prior Use of Alias

The record also contains several reports and supporting documents on the existence of a "Nelson Reyes" in New Jersey as early as 1978. Bosch concludes that this evidence shows that Santana used the alias of "Nelson Reyes" long before he met the Boschs, and the Boschs did not invent the alias for him. This does not alter the fact that the Boschs prepared false identification for Santana using the name "Nelson Reyes." Even if Santana could have been impeached on who invented this alias, such an impeachment would have had a very small impact on his overall credibility or the bulk of his testimony.

█ In summary, subsequent investigation has turned up information that could have been useful in impeaching some of the government's witnesses. That information, however, was not so critical, or even sufficiently useful, to Bosch's defense that it demonstrates Palacios' investigation fell below the standard of reasonableness.

### C. Preparation

Bosch argues that Palacios conducted no discovery and was unprepared for trial. The record, however, does not support this claim. There is not a hint in the portion of the transcript cited by Bosch that Palacios failed to conduct discovery. Moreover, the sections of the transcript at which Bosch claims Palacios demonstrated his unpreparedness demonstrate only that he had just received "what appears to be several hundred pages of documents" from the government an hour before the trial was to begin; that he asked the court for more time (which was granted) to review discovery materials prior to cross-examination on areas which he had not expected to arise; that he did not have a copy of a prosecution witness's preliminary hearing testimony when he needed it for cross-examination and excused the witness, subject to recall after he looked over that document; and that he had just been handed some transcripts which neither he nor counsel for Bosch's son had had a chance to

review. On the basis of these incidents, Palacios' preparation was not unreasonable.

### D. Lack of Objections

Bosch contends that Palacios' failure to object to the form of the prosecution's questions and to certain substantive testimony constituted ineffective assistance of counsel. Specifically, Bosch claims that Palacios failed to object to 1) the government's examination of three of its witnesses which consisted largely of a single unbroken stream of leading questions; 2) the testimony of Richard Sloan, the former narcotics officer who arrested Santana, and the accompanying slide presentation which was a running narrative punctuated with photographs of documents which posed hearsay, authentication, and best evidence problems; and 3) the testimony of Agent Newbrough which violated Rules 702 and 704 of the Federal Rules of Evidence.

### Leading Questions

Bosch correctly asserts that the examination of Efrain Santana, Emelina Torres, and Luis Gamboa includes a significant amount of leading questions. Bosch, however, does not maintain that any of this testimony would not have been admissible had it been elicited through nonleading questions. Palacios therefore reasonably could have decided to allow the leading questions to avoid emphasizing damaging testimony.

### Sloan Testimony

Bosch is also correct that the portion of Sloan's testimony underlying the slide presentation was essentially a narrative with a few leading questions and that some of the slides apparently were photographs of documents. Palacios did eventually object to the narrative form of Sloan's testimony, and the court ordered the prosecution to resume a question and answer format. More fundamentally, Bosch again does not maintain that Sloan's testimony, had it been given in the proper form, would not

have been admissible. It very well may have been trial strategy to allow the narrative and avoid emphasizing damaging information by objecting to the form of otherwise admissible testimony.

■■■■ In addition, the slides containing documents certainly may pose the evidentiary problems Bosch raises, but Bosch has failed to show that any of the documents were not properly admissible. In the absence of such a showing, Palacios' failure to object to the admission of the slides into evidence was not unreasonable or prejudicial to Bosch. *See United States v. Vaccaro*, 816 F.2d 443, 455 (9th Cir.) (failure to challenge search of defendant's house was not ineffective assistance of counsel where defendant failed to show that the evidence gained thereby would have been suppressed, or that there was a reasonable probability that he would have been acquitted had this evidence been excluded), *cert. denied*, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987).

### Newbrough Testimony

As previously discussed, Newbrough's testimony did not contravene Fed.R.Evid. 702 and 704, with the possible exception of Newbrough's statements about the bank's legal responsibility to include on the CTR form the name of the person conducting the transaction. Palacios' failure to object to admissible testimony was not unreasonable, and the admission of Newbrough's CTR testimony did not prejudice Bosch in view of our decision reversing the count involving this transaction.

### E. Jury Instructions

Bosch argues that Palacios' failure to object to the government's proposed jury instructions and his failure to request any jury instructions for the defense were also indicative of ineffective assistance of counsel. Specifically, Bosch argues that he was entitled to an instruction on informant and accomplice testimony, since Santana and Gamboa both were accomplices turned informants in exchange for reduced charges. Bosch also claims that an instruction that

association and physical presence alone do not constitute aiding and abetting should have been requested and given.

### Informant/Accomplice Testimony

■■■■ Bosch may have been entitled to an informant and/or accomplice instruction. "Such an instruction must be given when requested by defense counsel, at least where the testimony of an accomplice is substantially uncorroborated." *United States v. Martin*, 489 F.2d 674, 677 n. 2 (9th Cir.1973), *cert. denied*, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974); *accord United States v. Bernard*, 625 F.2d 854, 857–59 (9th Cir.1980). Here, the testimony of Santana and Gamboa was critical to the government's case on the charges which did not involve the undercover agent, and portions of this testimony were uncorroborated. Palacios' failure to request an informant or accomplice testimony instruction, in light of such an instruction's importance to Bosch's defense, may have fallen below the reasonableness standard.

We need not decide this point, however, because we find that the omission of an informant or accomplice testimony instruction here was not prejudicial. "[T]he Ninth Circuit, on numerous occasions, has held that a trial judge's failure to give such an instruction, *sua sponte*, does not constitute plain error." *United States v. Busby*, 484 F.2d 994, 997 (9th Cir.1973), *cert. denied*, 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974). Under *Strickland*, Palacios' failure to request this instruction was only prejudicial if it affected the result of the proceedings. Prejudice, therefore, like plain error, "will be found only where there is a strong need for the instruction: for example, where the accomplice's testimony is almost entirely uncorroborated and it is, as well, both critical and suspect." *Martin*, 489 F.2d at 677 n. 3.

Here, the district court "did not view the facts of this case as clearly calling for that instruction." RT at 3 (Nov. 19, 1986). Much of Santana's and Gamboa's testimo-

ny was corroborated by documentary evidence and testimony from Emelina Torres, Richard Sloan, and Agent Newbrough. In addition, Bosch has alleged no independent reason to suspect the credibility of Santana's and Gamboa's testimony. Finally, the court gave general credibility instructions, and Palacios questioned the credibility of both Santana and Gamboa in relation to their arrangements with the government during his closing argument:

> [O]ne of the things [Gamboa] did is, he decided to get even with Mr. Bosch. And in making that deal, he told him—he must have told him some fantastic story about Mr. Bosch, because the government has made deals with two of the biggest criminals I have ever known, Mr. Santana and Mr. Gamboa, to get at Mr. Bosch.

RT at 79 (Nov. 18, 1986). Similarly, Palacios referred to "all of the other instructions that you are going to receive regarding credibility, credibility of an informant. You think what these people had to gain with their testimony. You test their credibility." *Id.* at 91. It is true that these arguments might have had more weight if backed by the imprimatur of specific court instructions. General credibility instructions combined with arguments of counsel, however, have been found sufficient to withstand a plain error challenge. *See Busby*, 484 F.2d at 996–97. Under these circumstances, therefore, Bosch has failed to show that there is a reasonable probability that, but for the omission of an instruction on informant and/or accomplice testimony, the result of the trial would have been different.

*Aiding and Abetting*

The district court gave the standard aiding and abetting instruction to the jury:

> In order to aid and abet another to commit a crime, it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say that he willfully seek by some

act or omission of his to make the criminal venture succeed.

RT at 40 (Nov. 19, 1986); *see United States v. Armstrong*, 909 F.2d 1238, 1244 (9th Cir. as amended May 1, 1990). Bosch does not challenge this instruction or claim it was inadequate. An additional instruction that association and physical presence alone do not constitute aiding and abetting would have been duplicative, and therefore, Palacios did not unreasonably fail to request such an instruction. *See United States v. Feldman*, 853 F.2d 648, 666 (9th Cir.1988) (failure to request specific instructions does not amount to ineffective assistance of counsel when court's instructions were adequate), *cert. denied*, 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989).

In sum, Bosch's specific allegations of errors and improper omissions by Palacios either do not fall below the reasonableness standard in *Strickland*, or they fail to demonstrate that, but for these errors and omissions, the outcome of Bosch's trial would have been different. Bosch, therefore, was not denied effective assistance of counsel.

IV. Special Assessment Fee

 Bosch argues that the $500 mandatory special assessment fee imposed as part of his sentence is unconstitutional. The Supreme Court, however, recently upheld the constitutionality of such special assessments in *United States v. Munoz–Flores*, —— U.S. ——, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990). The district court, therefore, properly included the fee in Bosch's sentence. Because we reverse one of Bosch's convictions, however, we order that the special assessment be reduced by $50.

CONCLUSION

Sufficient evidence supports Bosch's conviction for conspiracy to aid and abet the possession with intent to distribute, and distribution of cocaine. His conviction for conspiracy to defraud the United States

through filing inaccurate CTRs, however, is not supported by sufficient evidence. The district court did not abuse its discretion by allowing the testimony of the government's expert summary witness, nor was Bosch denied his constitutional right to effective assistance of counsel. Therefore, Bosch's conviction on conspiracy to defraud the United States is reversed, and his conviction on the remaining charges, as well as imposition of the mandatory special assessment fee (less $50 for the reversed count of conviction), is affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED.