985 F.2d 574
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William BARKLEY, Kathleen White, and William C. White,
Defendants-Appellants.
 Nos. 91-10596, 91-10597 and 92-10015.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1992.
Decided Jan. 21, 1993.
 
 Appeal from the United States District Court for the Northern District of California, No. CR-90-20048-WAI; William A. Ingram, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before TANG, PREGERSON and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William White and William Barkley appeal from the judgment entered upon their convictions by a jury of four counts of tax evasion in violation of 26 U.S.C. § 7201 for taxable years 1983 through 1986, and one count of conspiracy to defraud in violation of 18 U.S.C. § 371. Kathleen White appeals from the judgment entered upon her conviction of two counts of filing a false return in violation of 26 U.S.C. § 7206 for taxable years 1983 and 1984, and one count of bankruptcy fraud in violation of 18 U.S.C. § 152. Each appellant contends that the district court erred in its instruction to the jury on the defense of good faith and the admission of the opinion of a Government witness that they had engaged in "illegal activities" in protesting the imposition of the federal income tax law. Kathleen White also assigns as error the admission of the testimony of a Government expert that she should have reported gross receipts from an import business, KW Enterprises (KWE) and the failure of the district court to instruct the jury that the import business was not a sole proprietorship. We address each of the contentions and the facts pertinent thereto under separate headings. We affirm because no error has been demonstrated.
 
 I.
 INSTRUCTION ON APPELLANTS' GOOD FAITH DEFENSE
 
 3
 Appellants contend that the district court erred in instructing the jury on their good faith defense to the charges of tax evasion. We review a claim of error in the formulation of a jury instruction for abuse of discretion. United States v. Powell, 955 F.2d 1206, 1210 (9th Cir.1992). In determining whether the district court's charge misled the jury in misstating the law, we must examine the instructions as a whole. Id.
 
 
 4
 The district court defined "willfully" as follows: "An act or failure to act is willfully done if done voluntarily and intentionally and with the purpose of avoiding a known legal duty." The court also instructed the jury that a good faith misunderstanding or mistake of law would negate willfulness. The court instructed the jury on the good faith defense as follows:
 
 
 5
 Before the Defendants can be convicted of the offenses alleged in the various counts of the Indictment, the Government must satisfy you by proof beyond a reasonable doubt that each of the Defendants acted willfully, with respect to each of the counts contained in the Indictment in this matter.
 
 
 6
 A good faith misunderstanding of the law or a good faith belief that one is not violating the laws negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable. In this regard, the burden is on the Government to prove beyond a reasonable doubt that each of the Defendants did not have a good faith misunderstanding of the law or a good faith belief that he or she was not violating the law.
 
 
 7
 In other words, if you have a reasonable doubt about whether a Defendant had a good faith misunderstanding of the law or a good faith belief that he or she was not violating the law, regardless of how unreasonable that misunderstanding or belief may appear, you must find such a Defendant not guilty[.] Defendants have claimed that they believed in good faith that they were acting lawfully and that they in good faith misunderstood their legal duties.
 
 
 8
 In identifying whether to believe this claim of good faith, you are free to consider any evidence from any source showing that the Defendants were aware of their legal duties and that they understood them.
 
 
 9
 That evidence may include court decisions which reject the Defendant's interpretations of the tax law and relevant provisions of the Internal Revenue Code and regulations[.] In deciding whether these Defendants actually believed in good faith that their conduct was lawful, you may also consider just how subjectively reasonable the asserted beliefs or misunderstandings were.
 
 
 10
 The more subjectively unreasonable the beliefs or misunderstandings are, you may find the more likely the Defendants knew their legal duties and were simply disagreeing with them.
 
 
 11
 Appellants present six arguments to support their assertion that the court's instructions were erroneous.
 
 
 12
 Appellants assert that the court improperly informed the jury that it could consider the reasonableness of defendants' beliefs that they were not violating the tax laws. However, the instruction was proper. See Powell, 955 F.2d at 1210-12. This court held in Powell that a jury is free to consider the reasonableness of a defendant's beliefs that he was not violating the tax laws to determine the credibility of his claim that he held those beliefs in good faith. Id. at 1212.
 
 
 13
 Appellants maintain that by instructing the jury that it could consider how "subjectively reasonable" their beliefs were, the jury was allowed to focus improperly on the reasonableness of their beliefs rather than on their good faith. An instruction that focuses on the reasonableness of a defendant's belief instead of his or her good faith is misleading. Id. at 1211-12. In Powell, the defendants were charged with willful failure to file income tax returns. We held that the Government fails in its proof of willfulness if the jury has a reasonable doubt whether a defendant had a good faith belief that he or she was not violating the tax laws. Id. at 1211. We also concluded that the jury could not "substitute its own determination of objective reasonableness as to the interpretation of the law in place of what the defendant subjectively believed." Id. at 1212.
 
 
 14
 The court's instruction in the instant matter did not inform the jury that they should determine whether appellants' beliefs were objectively reasonable. Instead, the court told the jury they should consider the subjective reasonableness of appellants' state of mind.
 
 
 15
 Appellants contend, however, that the court's use of the term "subjectively reasonable" was improper. They argue that the term is confusing and that the instruction misapplied Cheek v. United States, 489 U.S. 192, ----, 111 S.Ct. 604, 611 (1991), which only discussed the reasonableness of a defendant's belief, and not subjective reasonableness.
 
 
 16
 The district court did not misapply Cheek. The Supreme Court explained in Cheek that the jury was required to consider whether an accused's belief was reasonable: "[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge." Cheek v. United States, 498 U.S. at ----, 111 S.Ct. at 611-12.
 
 
 17
 We agree with appellants that the Supreme Court did not expressly refer to subjective unreasonableness in discussing a good faith defense to a charge of tax evasion. Contrary to appellants' contention, however, the district court's instruction placed upon the Government the burden of persuading the jury that appellants' belief that their understanding of the requirements of the tax laws was subjectively unreasonable.
 
 
 18
 The court's instruction followed closely the Supreme Court's rationale that the more unreasonable the view held by the taxpayer, the more likely it was not held in good faith. The use of the word "subjectively" by the district court focused the jury on the taxpayer's good faith, however, and not on some artificial objective definition of unreasonableness. The court's limiting instruction properly emphasized that the jury's notion of objective unreasonableness was not the proper test. United States v. Powell, 955 F.2d at 1212. The district court's instruction on the defense of good faith, when viewed as a whole, was consistent with Cheek.
 
 
 19
 Appellants claim that the district court improperly assumed the role of fact finder by suggesting to the jury that the appellants' beliefs were unreasonable. We disagree. Nowhere in the instructions did the district court state that appellants' beliefs were unreasonable. The court only stated that the jury could consider whether the appellants' beliefs were subjectively unreasonable. The court did not state that such beliefs were unreasonable.
 
 
 20
 Appellants assert that the instruction misled the jury into believing that they had the burden of proving that they acted in good faith. However, the instruction clearly stated that: "[T]he burden is on the Government to prove beyond a reasonable doubt that each of the Defendants did not have a good faith misunderstanding of the law or a good faith belief that he or she was not violating the law." Thus, the jury was properly informed that the Government, not the defendants, had the burden of proving willfulness. Cheek, 111 S.Ct. at 610-11.
 
 
 21
 Appellants challenge that portion of the instruction which allowed the jury to consider evidence of judicial decisions to determine if the appellants willfully violated the tax laws. The Supreme Court in Cheek stated that the jury was allowed to consider court decisions, codes, and regulations which showed that the defendant was aware of his duty to pay taxes. Id. at 611. Appellants argue, however, that the instruction improperly focused the jury's attention upon a tax court decision in which the Whites were defendants. The record does not support this contention. The district court made no reference in the instruction to any specific decision, code, or regulation. Because the tax court's decision relied upon by the Government was highly relevant to appellants' knowledge of the law, the jury was entitled to consider such evidence. Id. Accordingly, the district court did not err in instructing the jury that it could consider the decision in determining whether appellants acted in good faith.
 
 
 22
 The district court did not abuse its discretion with its formulation of jury instructions.
 
 II.
 ADMISSION OF AGENT JUSTER'S OPINION TESTIMONY
 
 23
 The Government had the burden of persuading the jury beyond a reasonable doubt that appellants willfully evaded payment of taxes on their income. Appellants' theory of defense was that they acted in good faith in believing that they did not have to declare any income that they transferred to their church after making a vow of poverty. To prove willfulness, and to counter the defense of good faith, the Government was required to demonstrate that appellants received income, and that they did not act in good faith in furnishing such income through the church records and then back into their own pockets. To meet this burden, and to assist the jury in understanding the complexities of appellants' scheme, the Government called two expert witnesses.
 
 
 24
 Kathleen White asserts that the district court abused its discretion in permitting IRS Agent Brian Juster to testify, over objection, that Kathleen White should have reported the gross receipts from KWE as her income. We review a district court's rulings on the admissibility of evidence for abuse of discretion. See United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 487 U.S. 1223 (1988) (district court's exercise of discretion to admit expert testimony will not be disturbed unless manifestly erroneous).
 
 
 25
 Kathleen White contends that the court abused its discretion in permitting Agent Juster to answer the question propounded by the Government because the officer was not qualified to express an opinion regarding whether a person had the legal obligation to report a business entity's gross receipts as income. The record shows that Agent Juster was called to testify as a summary witness and as an expert on tax computations. His duties as a revenue agent include the auditing of individual, corporate, and partnership income tax returns. He has received advanced training in individual, partnership, and corporate taxation. He had previously testified before the Tax Court regarding the determination of the correct tax liability. No objection was made concerning his qualifications as an expert on tax computations.
 
 
 26
 The district court did not abuse its discretion in permitting Agent Juster to testify that Kathleen White was required to report the gross receipts of KWE as her income. We held in United States v. Clardy, 612 F.2d 1139, 1153 (9th Cir.1980), that it was not error to permit an internal revenue agent to testify that an interest deduction was improper. The appellant argued in Clardy, as here, that the expert's opinion was "a question of law on which the judge should have instructed the jury." Id. We concluded that "this type of testimony is relevant to the issue of willfulness where the theory of the defense is that there is a good faith dispute as to the interpretation of the tax laws." Id. In the instant matter, as in Clardy, Kathleen White has asserted a good faith defense based on her interpretation of the tax laws.
 
 
 27
 The fact that Agent Juster's testimony was related to the question of Kathleen White's guilt did not make the testimony inadmissible. An expert's "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). Agent Juster's testimony was admissible under Clardy and Section 704(a).
 
 III.
 
 28
 ADMISSION OF REVENUE AGENT MEL STEINER'S EXPERT TESTIMONY
 
 
 29
 CONCERNING THE LEGALITY OF APPELLANTS' ACTIVITIES
 
 
 30
 Appellants argue that the district court erred in overruling their objection to Revenue Agent Mel Steiner's testimony that the activities of the accused constituted "illegal tax protester activity." The Government offered Agent Steiner's testimony to assist the jury in understanding appellants' activities which resulted in nonpayment of taxes because of their vows of poverty. Counsel for William White correctly characterized this type of case in his opening statement as invoking "[q]uestions of interrogation of a very complicated, a very complex, and many times very confusing, I think as we all know, set of laws, that is the internal revenue code."
 
 
 31
 Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify" to his or her opinion concerning a matter of specialized knowledge if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."
 
 
 32
 Agent Steiner testified that for the past ten years he has been the manager of a "special enforcement group" called the "fraud group." The fraud group concentrates "on the examination of returns of people who have put together schemes to avoid the tax laws." Agent Steiner testified concerning the typical activities of tax protesters that may appear innocent to the average juror but which may demonstrate illegal tax evasion. Appellants argue that the opinion testimony of Agent Steiner that their activities were illegal tax protester activity constituted a direct opinion on their guilt or innocence. We agree with appellants that a witness "may not give a direct opinion on the defendant's guilt or innocence." United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988). Contrary to appellants' argument, Agent Steiner did not express a direct opinion regarding the guilt or innocence of appellants on direct examination by Government counsel. Agent Steiner's testimony was limited on direct examination to his opinion that appellants' activities paralleled the conduct of other illegal tax protesters.[1]
 
 
 33
 Expert testimony on the modus operandi of criminals is permissible. For example, in United States v. Johnson, 735 F.2d 1200 (9th Cir.1984), we upheld the use of expert testimony to explain fraudulent schemes. The court in Johnson reasoned: "[t]he federal courts uniformly hold ... that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi. Such evidence helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." Id. at 1202.
 
 
 34
 Similarly, this court in Espinosa upheld the use of expert testimony to explain the modus operandi of narcotics traffickers. Espinosa, 827 F.2d at 612-13. See also United States v. Fleishman, 684 F.2d 1329, 1335-36 (9th Cir.) (expert testimony is admissible to help jury understand how drug dealers perform counter surveillance during narcotics transactions), cert. denied, 459 U.S. 1044 (1982).
 
 
 35
 Modus operandi testimony was necessary in this case to help the jury understand the complex scheme involved in using church "fronts," vows of poverty, and nominees to hide income from the IRS. The expert's testimony was admissible to assist the jury in understanding that the defendants' activities were part of a complex scheme to evade taxes.
 
 
 36
 Steiner's testimony during cross-examination supports our conclusion that the district court did not abuse its discretion in admitting Steiner's testimony. During cross-examination, Agent Steiner testified that in using the term "illegal activities," he was not expressing an opinion that a taxpayer was guilty of a crime. He stated he was unsure as to the standard for determining guilt. Finally, Agent Steiner acknowledged that only a jury could find that the evidence of criminal intent was sufficient to find a defendant guilty.
 
 
 37
 In United States v. Bosch, 914 F.2d 1239, 1243 (9th Cir.1990), a Government expert witness testified that the defendant's activities aided and abetted the distribution of cocaine. We recognized in Bosch that this testimony might be construed by a jury as an opinion by an expert concerning the guilt of the defendant. Id. at 1244. Nevertheless, we held that the court did not abuse its discretion in admitting this testimony. Id. We explained our holding as follows:
 
 
 38
 Here, as Bosch claims, Newbrough's testimony conceivably could be taken as an opinion on the mental state or guilt of Bosch, and thus would have unduly prejudiced the jury. Bosch's trial counsel, however, recognized this and brought out on cross-examination that all the activities on which Newbrough based his opinion would only be criminal if Bosch knew and intended that they be done in furtherance of cocaine distribution, "[a]nd it is the province of the jury to determine whether that has been established beyond a reasonable doubt." Similarly, in addition to the instruction on the inferences that the jury could reasonably draw, "the trial court properly instructed the jury on the weight it might ascribe to opinion testimony given at trial." Therefore, it is unlikely that the jury drew the improper inference that Bosch identifies from Newbrough's testimony, and the admission of this testimony was not an abuse of discretion.
 
 
 39
 Id. (footnote and citations omitted).
 
 
 40
 In the matter sub judice, to make sure that the jury understood the limited purpose for Agent Steiner's testimony regarding illegal activities, the court gave the following cautionary instruction:
 
 
 41
 From time to time in the course of the trial, and in writings that are referred to in the trial and so on, certain courses of conduct are characterized as illegal. As an example, illegal tax protesting and the like.
 
 
 42
 Now, I remind you that as I indicated to you earlier, that at the end of this trial I will give you express specific instructions on such things as that. The fact is that whether or not a course of conduct is indeed illegal is for you to determine, not for anyone else. You can consider a proper expression of opinion by a duly qualified expert but it's just the witness' testimony.
 
 
 43
 The ultimate decision is for you, and at the time I will go through each of the counts of this Indictment, and I will define for you several elements that must be proven in each of those counts. And it is the burden of the Government to prove each of those elements beyond a reasonable doubt.
 
 
 44
 So you may consider the testimony that is admitted in this case for whatever purpose it's admitted for, and it is fully open for your consideration, but the ultimate decision on these matters lies with you as Judges of fact in this case. So with that in mind, we'll continue with the cross-examination of Mr. Steiner.
 
 
 45
 Section 7201 of the Internal Revenue Code provides that "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony." 26 U.S.C. § 7201. The elements of the offense of willfully attempting to evade a tax are: 1) willfulness; 2) existence of a tax deficiency, and 3) an affirmative act constituting an evasion or attempted evasion of the tax. Sansone v. United States, 380 U.S. 343, 351 (1965). Steiner's testimony was only directed to the third element, not the first. He did not testify about the defendants' willfulness, nor did he testify for the purpose of showing that the defendants' conduct was illegal. Instead, he informed the jury how other people have used church "fronts" and vows of poverty to avoid paying taxes. The district court recognized this when it admitted Agent Steiner's testimony, stating "He's not being called on the issue of willfulness. He's been called on the issue of consistency of activity." Steiner merely testified that those people who do act illegally--i.e., those people who do willfully attempt to evade taxes--often use fake churches and vows of poverty to accomplish their goal. In other words, he testified that the defendants' behavior was consistent with the behavior of other people who had willfully attempted to evade taxes.
 
 
 46
 The record demonstrates that Agent Steiner's testimony concerning illegal tax protester activities was not intended to express an opinion that appellants were guilty of willfully violating the tax laws. The district court's timely limiting instruction commendably avoided any misunderstanding by the jury regarding the restricted use it could make of Agent Steiner's testimony. Under these circumstances, the district court did not abuse its discretion in admitting Agent Steiner's opinion testimony.
 
 IV.
 REFUSAL TO GIVE A JURY INSTRUCTION
 
 47
 Kathleen White argues that the district court erred in failing to give her proposed jury instruction that KWE was not a sole proprietorship. The standard of review for determining whether a district court erred by refusing to give a proposed instruction is unclear in this circuit. See United States v. Slaughter, 891 F.2d 691, 699 (9th Cir.1989). But see United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992) (stating that there is no conflict because the standard of review this court uses depends upon the reason why the proposed instruction was not given). One line of cases relies on the abuse of discretion standard. See e.g., United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986). The second line of cases states the standard of review is de novo. United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir.), cert. denied, 493 U.S. 969 (1989). We need not attempt to resolve this conflict, or choose the standard we prefer in this matter because, under either standard, the court did not err in refusing to give the proposed instruction.
 
 
 48
 The district court may instruct the jury on a question of law which is based upon undisputed facts. United States v. Jackson, 436 F.2d 39, 41 (9th Cir.1970), cert. denied, 403 U.S. 906, (1971). However, the facts are disputed as to whether KWE was a sole proprietorship.
 
 
 49
 There was evidence that tended to show that Kathleen White owned and operated KWE. Individuals who had done business with KWE were unaware that the church was purportedly involved in the business. One witness assumed that it was owned by Kathleen White. Sometimes KWE checks were signed in blank enabling Kathleen White to control the bank account. Also, the business had been deeded to the United Libertarian Fellowship Bishop of Los Altos. Thus, William White, Kathleen White's husband, had control over KWE because he was the "Bishop" of the church. Finally, the Whites changed the title to their property on another occasion after the Tax Court issued its opinion against them. Kathleen White offered evidence suggesting that she was a volunteer for KWE. She offered other evidence suggesting that ULF owned KWE. Because the ownership of KWE was in dispute, the district court did not err in leaving the issue to the jury.
 
 
 50
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 It is important to note that Agent Steiner's testimony was not based on a profile of tax protesters. Profile testimony is disfavored as evidence. United States v. Lui, 941 F.2d 844, 847-48 (9th Cir.1991). Steiner's testimony was not a profile of a tax protester, but a description of the modus operandi of a typical tax evader. Profiles do not describe how a crime is performed, but rather the behavioral characteristics typically associated with people who commit certain crimes. For example, a profile of a drug courier would describe a person who pays for airplane tickets with cash, does not carry luggage, and travels under an assumed name. To the contrary, the term "modus operandi" describes conduct which, when coupled with the requisite mental state, constitutes a crime. See United States v. Daniels, 723 F.2d 31, 32-33 (8th Cir.1983) (expert testifying on general practices of drug dealers); United States v. Burchfield, 719 F.2d 356, 357-58 (11th Cir.1983) (general practices of people passing counterfeit currency)