29 F.3d 637
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus Alonso VIZCARRA, Defendant-Appellant.
 No. 93-10253.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1994.
Decided June 16, 1994.
 
 Before: GOODWIN, POOLE, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jesus Alonso Vizcarra was convicted, following a jury trial, of conspiracy to distribute and to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. Sec. 841(a)(1). The district court enhanced Vizcarra's sentence, pursuant to Sentencing Guideline Sec. 3C1.1, for obstruction of justice, and sentenced Vizcarra to forty-five months incarceration followed by three years supervised release. Vizcarra appeals the district court's judgment and conviction, claiming that the court (1) erred in admitting the expert testimony of a federal agent regarding the various roles performed in drug transactions, and (2) failed to make the necessary findings of perjury prior to enhancing Vizcarra's sentence for obstruction of justice. We affirm.
 
 
 3
 I. Expert Testimony.
 
 
 4
 At trial, the government sought to establish that Vizcarra conspired in the possession and sale of marijuana by acting as a "lookout"--a term used to describe a person who participates in a drug deal by watching out for law enforcement personnel prior to and during the exchange of drugs for money. The government called FBI Agent John I. Plunkett III as an expert witness on the various roles performed by participants in drug transactions. Plunkett testified both generally about the various roles[1] and specifically regarding the standard modus operandi of lookouts.[2] Vizcarra argues that the district court erred in admitting this testimony.
 
 
 5
 Vizcarra did not raise this issue at trial, and therefore we review the district court's decision to admit Agent Plunkett's testimony for plain error. United States v. Dischner, 974 F.2d 1502, 1514 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993). "A plain error is a highly prejudicial error affecting substantial rights." Id.
 
 
 6
 We have recognized a distinction "between opinions of a defendant's guilt or innocence," which are impermissible, "and expert testimony regarding the various roles played by persons involved in illegal enterprises." United States v. Fleishman, 684 F.2d 1329, 1336 (9th Cir.), cert. denied, 459 U.S. 1044 (1982). In Fleishman and subsequent decisions, we
 
 
 7
 rejected the argument that expert testimony is inadmissible simply because it is founded solely on observations of innocent conduct. For that very reason, the expert testimony may be valuable to the jury.
 
 
 8
 United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988) (citing Fleishman, 684 F.2d at 1336). Nevertheless, Vizcarra argues that, because of the absence of other evidence linking him to the crimes charged, the probative value of Detective Plunkett's testimony regarding Vizcarra's seemingly innocent conduct was outweighed by its prejudicial effect. See United States v. Espinosa, 827 F.2d at 612 (trial court should carefully weigh expert testimony's probative value against its possible prejudicial effect).
 
 
 9
 Vizcarra relies heavily on United States v. Echavarria-Olarte, 904 F.2d 1391 (9th Cir.1990), in support of his argument. However, our decision in United States v. Echavarria-Olarte is inapposite. In Echavarria-Olarte, the government's expert testified generally about the structure of the Medellin Cartel and the Cartel's various methods of enforcing its will--through bribery, torture, and murder--while only limitedly discussing the specific role of one of the many co-conspirators involved in the immediate drug smuggling operation. 904 F.2d at 1398. We held that the expert's testimony had little probative value and was highly prejudicial. Id. Here, in contrast, all of Agent Plunkett's testimony was relevant, and none of it could be said to have been highly prejudicial. Plunkett restricted the brunt of his testimony to the role and methods of lookouts in drug transactions--the very role of which Vizcarra was accused.
 
 
 10
 Vizcarra also seeks to distinguish his case from the many Ninth Circuit cases in which we have upheld the admission of expert testimony of law enforcement officials regarding the various roles in criminal enterprises. See United States v. Mares, 940 F.2d 455 (9th Cir.1991); United States v. Bosch, 914 F.2d 1239 (9th Cir.1990); United States v. Andersson, 813 F.2d 1450 (9th Cir.1987); United States v. Fleishman, 684 F.2d 1329 (9th Cir.), cert. denied, 459 U.S. 1044 (1982). Vizcarra argues that, in each of the aforementioned cases, the evidence linking the defendant to drug activity was much more substantial. Here, by contrast, Vizcarra claims that his actions were consistent with that of an innocent person having no interest in a drug transaction.
 
 
 11
 However, we held that the circumstantial evidence presented by the government in United States v. Mares, 940 F.2d 455 (9th Cir.1991), which was no more substantial than in the present case, was sufficient to sustain a conviction for conspiracy to distribute heroin. In Mares, the defendants were observed speaking with a drug courier minutes before the transaction was to occur and circling the site numerous times; they appeared to be watching the deal and offered conflicting explanations when asked by the police what they were doing. 940 F.2d at 458-59.
 
 
 12
 Here, Vizcarra's presence at the scene, viewed in context with other evidence, supports the jury's verdict. Vizcarra twice followed into a parking lot a pickup truck driven by one Jose Martinez-Cano, a person making arrangements for the sale of 100 pounds of marijuana. On both occasions, Vizcarra parked some distance away from Martinez-Cano--a rational jury could find this to be an unusual course of action for someone just hanging out with a friend. On the first occasion, Vizcarra did not have to be told to follow Martinez-Cano when he left the parking lot, indicating at the very least some prior planning on their part. On the second occasion, Vizcarra was observed looking around the parking lot. In addition, the marijuana was located in the bed of the truck that Vizcarra was driving, yet Vizcarra neither showed surprise when the undercover agent removed a tarpaulin covering the marijuana, nor questioned the agent when he took a brown bag filled with marijuana from the truck bed.
 
 
 13
 Furthermore, Vizcarra's trial counsel cross-examined Agent Plunkett at some length regarding past situations in which people whom Plunkett initially thought were involved in drug activity turned out to be innocent. Such questioning helped guard against the jury taking Plunkett's testimony "as an opinion on the mental state or guilt" of Vizcarra. United States v. Bosch, 914 F.2d 1239, 1242-44 (9th Cir.1990).
 
 
 14
 In view of the other evidence presented at trial and the defense counsel's able cross-examination of Agent Plunkett, we cannot say that the district court committed plain error by admitting Agent Plunkett's testimony, or that Vizcarra's substantial rights were affected thereby. United States v. Dischner, 974 F.2d 1502, 1514 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993).
 
 
 15
 II. Obstruction of Justice.
 
 
 16
 The Supreme Court recently held that "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do so under the perjury statue we have set out." United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993). A finding by the sentencing court that the defendant obstructed justice is sufficient if it "encompasses all of the factual predicates for a finding of perjury." Id. at 117; see also United States v. Arias-Villanueva, 998 F.2d 1491, 1512 (9th Cir.), cert. denied, 114 S.Ct. 359 (1993) (sentencing court "not required to make specific findings as to specific portions of a defendant's testimony it believes to be false.") The Dunnigan Court defined perjury as "giv[ing] false testimony [under oath] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Id. at 116; see also 18 U.S.C. Sec. 1621.
 
 
 17
 We review a sentencing court's determination that a defendant obstructed justice for clear error. United States v. Barbosa, 906 F.2d 1366, 1369 (9th Cir.), cert. denied, 498 U.S. 961 (1990). The district court specifically found that Vizcarra had lied when he testified that he had no knowledge of the conspiracy, and that Vizcarra did so with the intention of altering the outcome of the trial. We cannot say that these findings are clearly erroneous. United States v. Rubio-Topete, 999 F.2d 1334, 1340 (9th Cir.1993).
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 For example, Agent Plunkett stated that
 I have found that in drug operations, some small, some large, and some international in nature, they [drug dealers] utilize personnel the same way law enforcement does. They have people that are responsible for managing the organization. They have people who really have very little to do with it, but have--they use their money. They finance the operation. They have people that are very much, like an undercover agent, will actually be involved in the transaction, the physical transaction, between two people of buying drugs and selling drugs. And also they employ people as bodyguards and as surveillance agents ...
 Tr., Vol. I(A), at 7.
 
 
 [2]
 Agent Plunkett testified at one point that
 what they [lookouts] will do is they will usually not from that specific location [i.e., where the transaction will occur], but from a vehicle, from a restaurant, from a truck, from a van, they will do the same thing that we do. They will look for anything suspicious.
 They're always looking for police vehicles that are in the near vicinity and they're also looking for what they refer to as a ripoff.... And they will have people ... whose main job is to just watch. Some of them aren't even aware of exactly what is going on, with the exception that it is a deal ...
 Tr., Vol. I(A), at 18.